691 A.2d 721

SEAT PLEASANT BAPTIST CHURCH
BOARD OF TRUSTEES

v.

Kenneth K. Atlantis LONG, et al.

No. 1063, Sept. Term 1996.

Court of Special Appeals of Maryland.

March 31, 1997.

W. Ray Ford, Bowie, for Appellant.

No brief or appearance by Appellees' counsel.

Argued before DAVIS, EYLER and THIEME, JJ.

DAVIS, Judge.

The Board of Trustees (appellant) of Seat Pleasant Baptist Church (the church) appeals from an order of the Circuit Court for Prince George's County mandating arbitration in appellant's lawsuit against Kenneth K. Atlantis Long, et al. (appellees).[1] Through a petition for *ex parte* injunctive relief filed on January 23, 1995, appellant and the Board of Deacons of the church (the Deacons) asserted that Long, once the pastor of the church, was fired but refused to leave; instead he absconded with church property. Appellant and the Deacons asked the court, *inter alia*, to restrain appellee Long from entering the church grounds or other church property, and to prohibit Long's access to the church's bank accounts. The petition also asked the court to direct Long to return items in his possession "which are or could be construed to be the assets" of the church, and asked the court to schedule a show cause hearing on the issuance of a permanent injunction.

On January 26, 1995, the court issued the requested *ex parte* injunction. The court enjoined Long from undertaking any obligations or actions on behalf of the church, from entering onto the property of the church for any purpose other than to return the church's property, and from taking any action concerning the financial or real property assets of the church. On February 1, 1995, Long filed a Motion to Dismiss the petition, which the circuit court dismissed as moot on April 24, 1995. Long filed his own Petition for *Ex Parte* Relief and Emergency Hearing on April 11, 1995, asserting that appellant and the Deacons were not the proper Board of Trustees and Board of Deacons of the church. Long also asserted that he was still the pastor of the church and that appellant and the Deacons wrongfully changed the locks on the church. Their actions, Long said, prevented him and other members from worshipping in the church and also

---

1. Initially, the Board of Deacons *and* the Board of Trustees of the church filed this action. On May 2, 1996, however, the Board of Deacons dismissed its action against Long, leaving as plaintiff only the Board of Trustees.

prevented him from correcting unsafe building conditions that he was ordered to correct by Prince George's County. Long asked the court to enjoin appellant and the Deacons from preventing Long's and other church members' entrance to the church for purposes of worship and repairs.[2]

On August 14, 1995, appellant and the Deacons amended their complaint for injunctive relief, requesting a declaratory judgment that they are the proper Boards of Trustees and Deacons of the church and that Long was properly removed as pastor of the church under the church's valid constitution. Appellant and the Deacons also asked the court permanently to enjoin Long from entering the church grounds and from presenting himself as pastor of the church. When no answer to the Amended Complaint was forthcoming, appellant and the Deacons filed a Motion for Default Judgment. The court denied the motion on October 30, 1995 for, *inter alia*, lack of a military affidavit and improper service of process. On November 20, 1995, appellant and the Deacons filed a Second Amended Complaint, asking for the same relief as in the Amended Complaint. Long filed his Answer on December 21, 1995. On January 17, 1996, appellant and the Deacons filed another Motion for Default Judgment that was never addressed by the court.[3]

A trial date for the matter was set for June 17–18, 1996. Difficulties in conducting discovery plagued the litigation but need no detailed explanation here. After a status conference on April 1, 1996, the court ordered appellant and the Deacons

---

**2.** The record does not disclose the court's response to this petition, if any. Regardless, the issue is not before us on appeal.

**3.** We are somewhat at a loss to decipher the record as it pertains to the second Motion for Default Judgment. Appellant and the Deacons had alleged that the due date for Long's answer, December 20, 1995, had passed without a filing. The record reflects that Long filed an Answer on December 21, 1995. This Answer appears to be one day late. The court never ruled on the Motion for Default Judgment, however, and discovery proceeded apace with no further mention of this seeming irregularity by either appellant or Long. Because no one appeals the circuit court's failure to rule, we move on without further comment.

to amend their complaint a third time and to add several parties as defendants in the matter. After another status hearing held on April 25, 1996, the court issued a somewhat Solomonic order, equitably dividing hours of access to the church between the two groups claiming exclusive right of access, pending the outcome of the trial on the merits.

On May 1, 1996, Long filed a preliminary motion that asserted a lack of necessary parties. He claimed that the individuals pursuing an action in the court no longer comprised the Board of Trustees or the Board of Deacons of the church. Specifically, he claimed that additional people had been elected to the Boards of Trustees and Deacons on January 18, 1995, and that in September of that year the church had completely replaced as Trustees and Deacons the individuals who had filed suit on behalf of the Board of Trustees and the Board of Deacons. The individuals styling themselves the Boards of Trustees and Deacons, maintained Long, lacked standing to bring this action on behalf of the Boards.[4]

On May 2, 1996, appellant alone responded with a Third Amended Complaint for Declaratory Relief. In this submission, it named as defendants, in addition to Long, those individuals styling themselves the Board of Trustees of Seat Pleasant Baptist Church: Oladele Dosunmu, Wendy Watkins, Annetta McRae, Danlowell Watkins, Levy Blackwell, Rayfield Harrison, and Evelyn Brown.[5] To its complaint for declaratory judgment, appellant added one count of civil conspiracy stemming from an alleged conversion of church funds and one count of trespass to land stemming from entry onto the church property and the alleged removal of equipment belonging to

---

4. The subject of this appeal is whether the validity of the proceeding that allegedly occurred on January 18, 1995 must be arbitrated. The validity of any elections held in September of that year and the issue of appellant's standing are not before us on appeal.

5. Long, Dosunmu, both Watkinses, Blackwell, Harrison, Brown, and McRae are the appellees in this appeal.

the church. For the latter two counts, appellant claimed compensatory damages of $150,000 plus interest and costs.[6]

On May 17, 1996, Long filed a Motion to Dismiss. He claimed that the Third Amended Complaint created a contest over the "fair conduct of an election" of Trustees because the Complaint alleged that Long had improperly attempted to appoint a new Board of Trustees on January 18, 1995, and that therefore no election was held on that date. MARYLAND CODE ANNOTATED, CORPS. & ASS'NS (C.A.) § 5–310 (1975, 1993 Repl. Vol.) requires arbitration of any contest within a religious corporation "over the fair conduct of an election." *Id.* Consequently, Long argued, the court should dismiss the complaint.

The court entertained the Motion to Dismiss on June 4, 1996, but took no testimony. Treating the motion as a Motion to Compel Arbitration, the court issued an order on June 4, 1996, staying all matters in the case pending arbitration under C.A. § 5–310. Appellant appeals from this order, raising two questions for our review, which we restate as follows:

I. Does C.A. § 5–310 require arbitration of this dispute as a contest "over the voting rights or the fair conduct of an election?"

II. Does C.A. § 5–310, as applied, violate the First Amendment to the Constitution of the United States?

We answer the first question in the negative. Consequently, we do not reach the constitutional issue. We vacate the circuit court's order and remand for further proceedings.

## FACTS

The constitution of the Seat Pleasant Baptist Church specifies that "[t]his Church shall be incorporated as a non-profit institution." All parties impliedly concede that the church was incorporated under the Religious Corporation Law, C.A. § 5–301 *et seq.*, and that C.A. § 5–310 therefore may apply. Long

---

**6.** It is unclear whether appellant claimed $150,000 for each of the new counts or whether the amount claimed was for damages under both counts.

had been the pastor of Seat Pleasant Baptist Church since January 24, 1993. On December 19, 1994, the Board of Deacons sent a letter to Long asking for his resignation as pastor for "actions ... strictly contrary to the teaching of God's word ...". and for a failure to submit to the church documentation certifying Long's ordination as a Baptist minister.[7] That same day, a regularly scheduled business meeting of the congregation was held, at which Long attempted to take a vote—a vote that Long, in the court below, termed "advisory"—on his continued tenure as pastor. Appellant claims that the meeting sparked a disturbance that was quelled only when riot police intervened.

The controversy over what happened in the next month forms the crux of this appeal. Appellant claims that, on January 1 and 8, 1995, the Board of Deacons announced from the pulpit that it would take a vote to terminate or retain Long as pastor. The vote would be taken, it announced, on January 19, 1995. Long, in the court below, denied that these announcements were made.

Appellant also claims that on January 15, 1995, Long announced from the pulpit that he would hold a meeting at the church on January 18, three days later. Appellees contend that Long held the special called meeting to elect new officers, and that new Trustees and Deacons were added to the Board of Deacons and Trustees at this meeting. Appellant, for its part, alleged in the court below that Long called the meeting solely in order to preempt his ouster as pastor. Appellant also claimed that, in fact, no elections were held; instead, Long merely appointed people at the meeting to serve as Deacons and Trustees.

---

**7.** In their Answers to the Second Amended Complaint, appellees claimed no knowledge of a meeting of the Board of Deacons on December 17, 1994. Appellees have failed to file a brief, however. Although this does not shift the burden of persuasion from appellant to appellees, we will not ignore the fact that only appellant has provided us with a statement of facts and proper argument in this case.

On January 19, 1995, appellant claims, the Board of Deacons met as scheduled. The meeting took place in the church parking lot.[8] Long alleged that this meeting never occurred. At the meeting, appellant claims that the Deacons unanimously voted to terminate Long as pastor of the church. By letter dated January 22, 1995, the Chairman of the Board of Deacons, Benjamin Exum, notified Long that his tenure as pastor was officially terminated in a vote taken under Article II, § 2(a) of the church By–Laws and Article VI, § 3 of the church constitution. On January 20, 1995, the Board of Trustees placed locks on the doors of the church. Subsequent events generated the petition for injunctive relief that led to this appeal. These events, irrelevant to the issue at hand, need no explanation or description.

The circuit court impliedly concluded that the Third Amended Complaint asserted a contest over the voting rights and the fair conduct of the alleged election on January 18, 1995. First, the court reasoned, the events of January 18 either pertained to the existence of an election, or they signalled the formation of a new church by appellees under C.A. § 5–311. The court concluded that appellees were not forming a new church because this was not their stated desire; therefore, the court concluded, the issue was confined to whether a valid election took place. To this end, the court isolated three issues for resolution:

> Therefore, this Court finds that the issue to be resolved here is who are the proper voting members of the church, what does or does not constitute a fair election for the church, and who may participate in that election.

Without any further analysis, the court held that these questions must be resolved through arbitration under C.A. § 5–

---

**8.** Appellant claims that, on January 18, 1995, Long and appellee Wendy Watkins contacted the Prince George's County fire marshall and requested an inspection of the church. After inspecting the church, the fire department closed the church pending corrections of safety hazards. Appellant's clear implication is that Long and Watkins called the fire marshall in order to forestall the meeting of the Board of Deacons the next day.

310. That article provides that any contest over the "voting rights or the fair conduct of an election" in a church must be arbitrated by an individual from among the members of a neighboring church of the same religious persuasion. *Id.*

## ANALYSIS

Clarification of the precise issue before us will help prevent confusion by marking a clear path for the narrow analysis that we are asked to undertake. Appellant claims that Long's January 18, 1995 "election," which purported to elect both Trustees and Deacons, was invalid. Appellant also claims that the vote taken by the Board of Deacons the next day effectively removed Long as pastor. Because the Third Amended Complaint dismissed the complaint of the Board of Deacons, however, Long's Motion to Dismiss, filed in response to that complaint, only addressed appellant's allegation that trustees were improperly elected on January 18, 1995. Long argued that appellant's challenge to the January 18 "election" is a dispute over the fair conduct of an election and must be arbitrated under C.A. § 5–310. This was the only issue addressed by the circuit court.

Thus, we are not asked to pass on the validity of the January 18, 1995 "election" called by Long. We are also not asked to pass on the validity of the vote, allegedly taken the next day, to oust Long as pastor. Nor must we determine whether a question as to that January 19, 1995 vote must be arbitrated in accordance with C.A. § 5–310. Rather, the precise issue before us is simply whether the validity of the January 18, 1995 vote, which purported to elect new trustees, must be determined by arbitration.[9]

---

9. In an early motion, Long alleged that a vote taken by the congregation in September, 1995 completely replaced the old Board of Trustees and Board of Deacons with new ones. Long failed to raise this contention in its Motion to Dismiss and in oral argument before the circuit court on the motion. Because Long, as the movant below, had the burden of persuasion in the circuit court hearing on his motion, this aspect of the case is not before us.

Appellant, for its part, relies principally on its allegation that Long failed to give the notice for electing new trustees to the Board of Trustees of the church that is required by the church's constitution and By–Laws. Appellant essentially presents three arguments that C.A. § 5–310 should not apply to the event that occurred on January 18, 1995. First, it says, the dispute is secular, not ecclesiastical, in nature. Thus, the courts are the proper forum for resolving the dispute. Second, continues appellant, although the legislature may mandate arbitration for purely secular disputes, the dispute in this case is not over the "fair conduct of an election," and C.A. § 5–310 does not apply. Third, appellant concludes that if the statute does apply, then its application violates the First Amendment and is unconstitutional. We will address each argument in turn.

## A

Before we turn to appellant's arguments, however, we must resolve one preliminary issue. It is not immediately clear whether the order entered by the circuit court is an appealable final order. As appellees did not file a brief, we raise this issue *nostra sponte* in the knowledge that appellees' lack of a response does not relieve appellant from its burden of persuasion on appeal.

■ Generally, we follow the rule that only final judgments may be appealed. MD.CODE ANN., CTS. & JUD. PROC. (C.J.) § 12–301 (1974, 1995 Repl.Vol.). Exceptions to this statutory rule are listed in C.J. § 12–303, but are irrelevant here. A judgment generally is considered "final" if it determines and concludes the rights involved, or denies the appellant the means of further prosecuting his rights and interest in the subject matter of the proceeding. *E.g., McCormick Constr. Co. v. 9690 Deerco Rd. Ltd. Partnership*, 79 Md.App. 177, 182, 556 A.2d 292 (1989) (citations omitted).

*McCormick Constr. Co.* seems at first blush applicable to the case *sub judice.* In that case, the appellant had filed an action for a mechanic's lien. The court was advised that a

contract required arbitration. The court stayed the proceedings, pending arbitration on the specific issue of whether the appellant had the right to establish a mechanic's lien. *Id.* We held that "[t]he court order settled nothing; neither did it conclude any rights or deny any party the means of proceeding further," because the appellant could return to the circuit court for further relief after arbitration on the specific issue. *Id.*

Through a brief discussion of *Litton Bionetics, Inc. v. Glen Constr. Co.*, 292 Md. 34, 437 A.2d 208 (1981), we admitted that court orders referring a case to an arbitrator may sometimes be the subject of a direct appeal. *McCormick Constr. Co.*, 79 Md.App. at 182–83, 556 A.2d 292. In *Litton Bionetics*, the appellant had filed a separate action for declaratory relief in the circuit court, requesting a declaration that two mandatory arbitrations should be consolidated. *Litton Bionetics*, 292 Md. at 38–39, 437 A.2d 208. The circuit court denied the appellant's petition by written order, effectively directing the separate arbitration of the two disputes. *Id.* at 39, 437 A.2d 208. The Court of Appeals held that the order denied all of the relief sought by the appellant and completely terminated the declaratory action that the appellant had filed in the circuit court. Thus, the order was an appealable, final judgment. *Id.* at 42, 437 A.2d 208.

Building on *Litton Bionetics*, the Court of Appeals has clearly held that "a trial court's order sometimes may constitute a final appealable judgment even though the order fails to settle the underlying dispute between the parties." *Horsey v. Horsey*, 329 Md. 392, 401, 620 A.2d 305 (1993); *see also Chesapeake Beach v. Pessoa Constr. Co.*, 330 Md. 744, 750, 625 A.2d 1014 (1993) (citing *Horsey* ). The Court stated in *Horsey:*

> Where a trial court's order has "the effect of putting the parties out of court, [it] is a final appealable order" ... A circuit court's order to arbitrate the entire dispute before the court does deprive the plaintiff of the means, in that case before the trial court, of enforcing the rights claimed. The order effectively terminates that particular case before

the trial court. Thus, the order would clearly seem to be final and appealable. . . .
*Id.* at 401–402, 620 A.2d 305 (citations omitted).

The procedural posture of a case is crucial here. In *Litton Bionetics* and *Horsey*, the order to arbitrate effectively terminated the plaintiff's particular action before the circuit court. In *McCormick Constr. Co.*, however, the action filed was for the right to establish a mechanic's lien. *McCormick Constr. Co.*, 79 Md.App. at 179, 556 A.2d 292. We held that the court had merely *stayed* the proceedings by virtue of the arbitration order, but had retained jurisdiction. *Id.* at 182, 556 A.2d 292. Thus, the appellant's right to establish a mechanic's lien was not denied or impaired by the staying of the court case. In contrast to *Litton Bionetics*, moreover, the proceedings in the circuit court were not terminated, but only stayed. *Id.* at 182–83, 556 A.2d 292. Jurisdiction remained in the court to take further action following the arbitration award, and "[p]resumably, that action would include foreclosure of the lien obtained through the arbitration process." *Id.* at 183, 556 A.2d 292.

*Horsey* may be distinguished in the same manner. The court's direction of arbitration in that case effectively terminated that particular case before the trial court and denied all relief sought by the appellant. *Horsey*, 329 Md. at 402–03, 620 A.2d 305. Unlike *Litton Bionetics* or *Horsey*, the order directing arbitration in the case *sub judice* effectively stayed the proceedings until an arbitrator could determine the validity of the purported elections held on January 18, 1995. The court treated the "Motion to Dismiss" as a petition for order to arbitrate. It retained jurisdiction in the case so that it could decide on the merits, after arbitration of that particular issue, who was entitled to the property of the church. In this respect, *McCormick Constr. Co.* would seem to apply, rather than *Litton Bionetics* or *Horsey*.

Nevertheless, in *Pessoa Constr. Co.*, a case decided immediately after *Horsey*, the Court of Appeals addressed whether an order mandating arbitration was an appealable final judgment when the trial court ordered arbitration for only one

issue of a broader claim filed in the circuit court, retaining jurisdiction to decide the merits after arbitration. *Pessoa Constr. Co.*, 330 Md. at 750–54, 625 A.2d 1014. That case, like *Litton Bionetics*, was decided under the Uniform Arbitration Act, which grants a specific right of action to a party challenging the existence of an arbitration agreement in a contract. C.J. § 3–208. In other words, explained the Court, even if no proceedings were pending in a circuit court, a party could file an action to stay arbitration under this section. *Id.* at 751, 625 A.2d 1014 ("A petition to stay arbitration proceedings, brought pursuant to § 3–208, may be prosecuted as a separate action.").

Key to the Court's opinion is its next conclusion. The motion for stay occurred in the middle of an action by the appellant for breach of contract, misrepresentation, and conspiracy. *Id.* at 752, 625 A.2d 1014. At the same time that it filed this action, the appellant moved to stay its own action, pending arbitration. *Id.* Recognizing the particular posture of the case before it—that, in fact, although the appellant *could have* filed its petition for stay as a separate action, it did not—the Court of Appeals nevertheless held that the denial of the stay petition (the order to arbitrate) was appealable, even though it did not dispose of all issues in the case. *Id.* The Court explained:

> As we have indicated, the petition could have been filed as a separate action. It is a special proceeding, involving a claim that is separate and distinct from the claim filed by Pessoa in the civil action.

*Id.* Thus, the Court reasoned, if the order constituted a final judgment, then the Court could certify that order as a final judgment under MD. RULES 2–602 and 8–602[e], even though the order did not finally dispose of all claims in the action in which it was filed and did not put the appellant out of court. *Id.* at 752–53, 625 A.2d 1014.

The Court then concluded that the order denying the stay of arbitration denied all of the relief sought by the *petition* for stay and completely terminated the claim brought under C.J.

§ 3–208. Thus, even though the petition was filed in an existing action, the Court concluded that it was a separate claim and that the trial court could have certified the order as final under RULE 2–602(b). The Court then exercised its discretion and certified the order as a final judgment under RULE 8–602(e)(1) (appellate court may enter final judgment on its own initiative if it determines that the lower court had the discretion to certify the order as final under RULE 2–602(b)).

■ We believe that *Pessoa Constr. Co.* is applicable to the case *sub judice*. Even though that case occurred within the context of the Uniform Arbitration Act, which expressly grants a cause of action to petition the court for a stay of arbitration order in cases governed by the Act, the Declaratory Judgments Act would have provided a similar avenue for Long to petition the court in this case. COURTS AND JUDICIAL PROCEEDINGS § 3–406 provides:

> Any person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction . . . arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations under it.

*Id.* In short, Long could have, if he chose, filed a claim in the circuit court, seeking a declaration that he did not have to litigate in the circuit court the issue of the validity of the elections of January 18, 1995. Our conclusion is not without precedent, for the action filed by the appellant in *Litton Bionetics* was a declaratory action. *Litton Bionetics,* 292 Md. at 38–39, 437 A.2d 208. The relief sought was, *inter alia,* a declaration that two arbitrations should be consolidated. *Id.* The court's decision to deny this request was a final judgment. *Id.* at 42, 437 A.2d 208. *Pessoa Constr. Co.* makes irrelevant the question of whether the request was filed by itself or within the context of broader litigation. *Pessoa Constr. Co.,* 330 Md. at 752–53, 625 A.2d 1014.

The circuit court in the case *sub judice* did not certify its order as final, although it could have. Thus, under RULE 8–602(e), we must determine whether to dismiss the appeal, remand the case to the circuit court to decide whether to

direct the entry of a final judgment, or enter a final judgment on our own initiative. We may enter a final judgment on our own initiative if we determine that there is "no just reason for delay [of an appeal]." RULE 2–602(b) (1997).

■ We conclude that no just reason exists for delay of an appeal of the court's order to proceed to arbitration. The court concluded that appellant's challenge to the purported election of January 18, 1995 raised questions concerning voting rights in the church, what constitutes a fair election, and the proper participants in that election. Appellant rests on one argument in its challenge to this conclusion—that Long failed to meet the requirements for election announcements contained in the By–Laws; therefore, the issue is not the fair *conduct* of an election, but the existence *vel non* of an election.[10] We agree that this argument, founded as it is upon an analysis of the governing document of the church rather than upon religious doctrine, should be considered by us before an arbitrator considers it. Moreover, once submitted to arbitration, the issue is moot. Therefore, we will enter a final judgment of our own initiative. RULE 8–602(e)(1)(C). Whether appellant has stated all of the relevant issues and whether it is correct in its assessment is another matter.

## B

### I

We need not spend much time on appellant's first contention: that this dispute is secular rather than ecclesiastical in

---

**10.** The record extract contains two sets of documents, each appearing to be the constitution and By–Laws of the church. The record reveals that both sides disagree over what documents are the genuine constitution and By–Laws. Without a doubt, the documents differ in material respects, although we need not go into the differences. Appellant claims that only one part of the By–Laws or constitution is relevant to this appeal—the procedure for calling a special meeting to elect new officers, contained in Article VI, § 3 of the constitution. Both documents purporting to be the true constitution mandate that the meeting's time and purpose must be announced from the pulpit at least one week in advance, or each member must be notified in writing of the time and purpose at least three days in advance.

nature, and that, because it invokes no questions of church doctrine or polity, the court should decide the issue instead of referring it to an arbitrator. This argument, in our view, is beside the point, as C.A. § 5–310 mandates arbitration not only for issues ecclesiastical in nature, but also for many secular issues arising in disputed church elections.

In *American Union of Baptists v. Trustees of the Particular Primitive Baptist Church at Black Rock, Inc.*, 335 Md. 564, 644 A.2d 1063 (1994), the Court of Appeals expressly rejected the notion that issues of church polity inevitably arose in disputed church elections. *Id.* at 573, 644 A.2d 1063. It contemplated purely secular issues that nevertheless had to be submitted to arbitration because they concerned the "fair conduct of an election." Allegations of "voter fraud, ballot-box stuffing, incorrectly printed ballots, or other misdeeds that are quite secular in nature" illustrate those matters of election conduct that are reviewable by the courts. *Id.*

Thus, appellant's argument that the issue should not be arbitrated because it is secular in nature begs the question of whether the dispute should be arbitrated. CORPORATIONS AND ASSOCIATIONS § 5–310 does not say that ecclesiastical or doctrinally-driven contests concerning the voting rights or the fair conduct of elections must be arbitrated—it includes those contests over the voting rights or fair conduct of elections that invoke secular issues as well. The character of the contest is relevant, as the Court of Appeals noted in *American Union of Baptists*, in deciding whether a court may review the arbitrator's decision. *See id.* at 574, 644 A.2d 1063 ("Each set of circumstances must be evaluated ... to determine whether ... a court would be forced to wander into the 'theological thicket' in order to render a decision.").

## II

Thus, the question becomes whether the challenge to the January 18, 1995 "election" is a contest "over the voting rights or the fair conduct of an election." The circuit court ruled that both voting rights and the fair conduct of an election were

implicated in deciding the issue of the validity of the January 18, 1995 "election." We do not believe it necessarily to be so.

Appellant has consistently alleged that Long called the meeting on January 15, 1995, in violation of the church constitution's requirement that special meetings be called from the pulpit at least one week in advance, or that each member of the church be notified in writing at least three days in advance of the meeting. If this is the only issue upon which the court must pass, we believe that it need not be arbitrated. In our view, the fulfillment of a procedural prerequisite for an election pertains to the existence of an election rather than to the "fair conduct" of an election. The phrase "fair conduct of an election" presupposes that what took place was, in fact, an election. An examination into the particular methods and practices used to conduct the election must be arbitrated by someone of "the same religious persuasion." C.A. § 5–310(a).

█ By contrast, if the constitution of the church sets forth a specific, secular requirement that must be met in order to hold an election, and that requirement is not met, then the election was never held. It is void. Such a situation requires an examination into the very existence *vel non* of an election, not the fairness of the way it was conducted.[11]

█ Therefore, we shall vacate the order of the circuit court and remand for further proceedings. We vacate, rather than reverse, because the record does not assure to our complete satisfaction that the challenge to the purported election of January 18, 1995 does *not* implicate issues of voting rights and membership in the church. For example, Long, in

---

11. It is well settled that courts may interpret the corporate charter and by-laws of a church in order to resolve secular questions of church property. *See generally Hayman v. St. Martin's Evangelical Lutheran Church,* 227 Md. 338, 176 A.2d 772 (1962). *See also Maryland & Virginia Eldership of Churches of God v. Church of God at Sharpsburg, Inc.,* 254 Md. 162, 170–71, 254 A.2d 162 (1969) (interpreting the corporate charters of two churches as "neutral principles of law"). We believe that Maryland decisions provide ample support for holding that the by-laws and constitution of a church govern in deciding whether an election validly occurred.

his Motion to Dismiss, alleged that Lonnie Coleman, who claims to be the current Chairman of the Board of Trustees, claimed in his deposition that one reason the "election" of January 18, 1995 was invalid was that the officers "elected" were not members of the church. The question of membership in a church not only must be arbitrated under C.A. § 5–310, but is not subject to judicial review. "It is well settled in this State that the determination of a membership in a church is a question well embedded in the 'theological thicket' and one that will not be entertained by the civil courts." *American Union of Baptists*, 335 Md. at 577, 644 A.2d 1063 (citing *Evans v. Shiloh Baptist Church*, 196 Md. 543, 551, 77 A.2d 160 (1950)).

■ Coleman's deposition was not provided in the record, however; in any case, appellant appears to have abandoned this argument on appeal. On remand, therefore, the court should be alert to any argument by appellant that the proceeding that took place on August 18, 1995 was not an election for any reason involving voting rights or membership in the church. The court in this case draws its right to examine the governing documents of the church from its inherent duty to resolve questions involving church *property*. *See Id.* at 576, 644 A.2d 1063. Nevertheless, it may only apply "neutral principles of law" in its examination of the procedure for calling an election. *Id.* Any question of doctrine or membership is nonjusticiable, even in a dispute centering on church property. *Id.* Moreover, while questions concerning voting rights in an election may be justiciable under certain conditions—such as when a member fails to fulfill secular requirements for voting under the constitution or by-laws—such questions fall within the ambit of C.A. § 5–310 and must be arbitrated.

### III

■ Because we remand, we do not reach appellant's argument that C.A. § 5–310 is unconstitutional as applied. At any rate, that argument was not raised in the court below and is

therefore not before us on review. *See, e.g., Passamichali v. State,* 81 Md.App. 731, 737, 569 A.2d 733, *cert. denied,* 319 Md. 484, 573 A.2d 808 (1990) (the constitutionality of a statute will not be considered on appeal when the question was not raised in the lower court); *Johnson v. State,* 63 Md.App. 485, 496, 492 A.2d 1343 (1985) (a constitutional question not tried and decided in the circuit court is not preserved for appellate review).

JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEES.