749 A.2d 231

**In re DAMON M.**

**No. 1006, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

April 3, 2000.

450

Michael R. Malloy, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Nancy C. Hopkins, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued before SALMON, SONNER and JOHN J. BISHOP, Jr. (Retired, specially assigned), JJ.

JOHN J. BISHOP, Judge.

On November 8, 1996, the Montgomery County Department of Health and Human Services ("DHHS") filed a petition alleging that Damon M. was a child in need of assistance ("CINA"). On April 21, 1997, the District Court of Maryland for Montgomery County, sitting as a juvenile court, found Damon to be a CINA and ordered that he remain in the custody of DHHS for placement in a treatment foster home through the Baptist Home for Children and Families. Between August 14, 1997 and May 7, 1999, five disposition and review hearings were held. Until the last hearing, the permanency plan for Damon was reunification with his mother, Monica M. At the May 7, 1999 hearing, however, the court (McHugh, J.) granted the request of DHHS to change the permanency plan for Damon to long-term foster care. At the same time, the court ordered DHHS to continue to provide reunification services and ordered that the frequency of the visits between Damon and his mother be increased.

## ISSUE PRESENTED

On June 4, 1999 Monica M. filed this appeal pursuant to Md. Cts. & Jud. Proc.Code Ann. § 3–832, which provides that appeals from decisions of the District Court in Montgomery County sitting as the juvenile court shall be treated in the same manner as if from a decision of a circuit court. The sole question presented is whether the court erred in changing the permanency plan for Damon from reunification to long-term foster care.

## DISCUSSION

Appellee, DHHS, included in its brief a Motion to Dismiss this appeal. DHHS contends that the court's Order of May 7, 1999, is not appealable because it has no adverse effect on Monica's substantive rights. Relying on *Lipsey v. Lipsey,* 464 S.W.2d 529 (Mo.Ct.App.1971), DHHS argues that since the court's Order affects only the permanency plan for Damon, and does not change Damon's custody or Monica's visitation rights, Monica is not aggrieved by the ruling and, therefore, cannot maintain this appeal.

Although we do not agree that *Lipsey* controls, we agree with DHHS that the court's Order of May 7, 1999, is not appealable. Because this is an issue of first impression in Maryland, we will provide an extended discussion.

### A. Factual Background

Damon M. was born on September 29, 1986. He has a sister, Elizabeth M., who is three years older than he. In 1988, the family was referred for social services after Elizabeth set fire to the apartment building in which the family was living. The children's mother, Monica M., did not respond to offers of assistance from the DHHS. The family again came to the attention of DHHS in March 1991, when Monica left the children in the care of a baby-sitter while she visited New York, without leaving information about where she could be reached.

In September 1992, neighbors reported that Monica was locking Elizabeth out of the family's apartment. A subsequent investigation revealed that Elizabeth was also being beaten with a belt, subjected to verbal abuse, and deprived of food as punishment. Monica claimed that her treatment of Elizabeth was in response to the girl's behavior. When Damon attempted to let his sister enter into the apartment he, too, was beaten. Both children were often left unsupervised for more than 24 hours at a time when Monica traveled to other states. Eventually, Elizabeth left the family home and went to live with neighbors.

On November 2, 1996, Damon was reportedly unsupervised during the day and into the evening and he tried to make arrangements to spend the night with neighbors. Two days later, a social worker visited the family's apartment. The social worker described the apartment as being like a warehouse. Boxes were stacked floor to ceiling, the toilet facilities appeared to be broken, and an odor emanated from the bathroom. The social worker spoke with Monica about seeking medical attention for Damon, who had hurt his finger at school. Monica responded that the family did not have medical insurance and that no care could be provided.

On November 7, 1996, Damon was removed from his mother's home because he was found sleeping in the hallway of the apartment building where the family lived. Damon had slept in the hallway for two nights because his mother would not let him into the apartment. In fact, Damon had been locked out of the family's apartment so many times that he kept food and sleeping gear in a hiding place.

From June 9, 1997 to July 14, 1997, Monica participated in a weekly parenting class. She had perfect attendance and actively participated in the sessions. Monica also received individual therapy and participated in family therapy.

At the time of the May 7, 1999 review hearing, Damon was living in a therapeutic foster home. He was having difficulty in school and, since February 1999, had been suspended four times. Damon received psychological testing at school and

was found to be "emotionally impaired" and in need of special education. Monica was unable to become fully involved in resolving Damon's educational issues; although she had been informed of meetings at Damon's school, she had missed the last three. In addition, although Monica was permitted to have weekly, unsupervised, overnight visits with Damon in her home, visitation was sporadic.

Karen Crist, a social worker, and Lisa Lozier, a foster care provider, testified at the May 7, 1999 hearing. Ms. Crist recommended changing the long term plan for Damon from reunification to long term foster care because she perceived that Monica was inconsistent in her parenting and because of the condition of Monica's home.

According to Ms. Crist, Monica visited with Damon about 13 or 14 times in the six months prior to the hearing, but did not always keep DHHS notified of her whereabouts. She observed that Monica appeared somewhat distant when interacting with Damon. For example, when Monica accompanied Damon to get eye glasses, although she had not seen him for a considerable amount of time, she isolated herself in a corner while Damon sat on the other side of the room and watched television. Ms. Crist acknowledged that she has had only a limited opportunity to observe interaction between Damon and his mother.

Ms. Crist was critical of the condition of Monica's home. She testified that the window blinds are generally drawn and, as a result, the room is dark. For a considerable amount of time, boxes have been stacked in the apartment; a dining room table and some chairs are stacked against a wall; and even though Monica had lived in the house since September 1998, the living room looked as if she had just moved in. Ms. Lozier, of the Baptist Home For Children, arranged foster care placements for Damon and provided therapy for him. She has worked with Damon to help him manage his anger, particularly in school where he has a difficult time ignoring negative behavior from other students. She testified that Damon has expressed a desire to be returned to his

mother. She observed that Damon will benefit from a stable environment with consistent rules and close monitoring of his school work.

## B. Dismissal

Appellee asks us to dismiss this appeal on the ground that Monica was not aggrieved by the lower court's May 7, 1999 Order. Appellee relies on *Lipsey v. Lipsey,* 464 S.W.2d 529 (Mo.Ct.App.1971). In *Lipsey,* a father appealed from a decree which modified custody of his two children so that major custody shifted from the children's paternal grandparents to their mother. The father, who did not seek custody for himself, argued that the mother did not affirmatively establish her fitness. The Court dismissed the appeal due to lack of standing, and based its ruling on its conclusion that the father was not aggrieved by the judgment modifying custody. It held that a party is aggrieved by a judgment only when property or pecuniary rights or interests, or personal rights are prejudiced. *Lipsey,* 464 S.W.2d at 531. Since the father was asserting a vicarious claim for the grandparents, he was not personally aggrieved by the judgment modifying custody and did not have standing to appeal. Even though it held the father did not have standing, the court did review the evidence because of the State's relationship as *parens patriae* in child custody proceedings and held that the evidence was sufficient to warrant the modification.

*Lipsey* is distinguishable. In *Lipsey,* the father was never a party to the action to modify the custody decree. The custody dispute existed between the paternal grandparents and the children's mother. Here, Monica is a party to the action. *See* Md. Cts. & Jud. Proc.Code Ann. § 3–801(r)("party" includes the child's parent). Although Damon has been in the custody of DHHS and in foster care for nearly three years, Monica has not relinquished her parental rights. On the contrary, she has consistently and regularly asserted her desire to be reunited with Damon. Monica continues to have some visitation with Damon and, pursuant to the May 7, 1999 Order, visitation was increased to, at least, once a week. The only change in the

May 7, 1999 Order that is relevant to this appeal is the change in the permanency plan from reunification to long-term foster care.

As in *Lipsey,* Maryland cases hold that a party may appeal from a favorable judgment only if the appellant has a personal, pecuniary, or property interest in the subject matter of the litigation, and that interest will be directly and substantially injured by the trial court's alleged error. *See, e.g., Offutt v. Montgomery County Board of Education,* 285 Md. 557, 564, n. 4, 404 A.2d 281, 285 n. 4 (1979); *Administrator, Motor Vehicle Administration v. Vogt,* 267 Md. 660, 664, 299 A.2d 1 (1973); *Board of Trustees of Baltimore County Community Colleges v. RTKL Associates, Inc.,* 80 Md.App. 45, 51–52, 559 A.2d 805, 808–09 (1989), *cert. dismissed,* 319 Md. 274, 572 A.2d 167 (1990). We must determine whether Monica is entitled to maintain this appeal.

In Maryland, a party may appeal from a final judgment that settles the rights of the parties or concludes the cause. Md. Cts. & Jud. Proc.Code Ann. § 12–301; *Town of Port Deposit v. Petetit,* 113 Md.App. 401, 409, 688 A.2d 54 (1997); *Blake Construction Co. v. Stearman,* 36 Md.App. 432, 433–35, 373 A.2d 1266 (1977). A final judgment exists when the rights of the litigants have been established conclusively. *Sigma Reproductive Health Center v. State,* 297 Md. 660, 665, 467 A.2d 483 (1983). The test for determining the finality of a judgment is that it must be so final as to determine or conclude the rights involved or to deny appellant the means of further prosecuting or defending her rights and interests in the subject matter of the proceeding. *Seat Pleasant Baptist Church Bd. Of Trustees v. Long,* 114 Md.App. 660, 669, 691 A.2d 721 (1997); *Smith v. Taylor,* 285 Md. 143, 146–47, 400 A.2d 1130 (1979). The reason for this rule against piecemeal appeals is because to permit appeals from decisions of a lower court which do not finally settle the rights of the party or conclude the cause, would enable either plaintiffs or defendants to protract a suit to an almost indefinite period. *Blake Construction Co. v. Stearman,* 36 Md.App. 432, 434–35, 373

A.2d 1266 (1977); *Hillyard Construction Co. v. Lynch,* 256 Md. 375, 260 A.2d 316 (1970). "Were the rule otherwise, the appellate courts would be inundated with all sorts of pretrial rulings to review, which might or might not affect the ultimate outcome of the case." *Flower World of America, Inc. v. Whittington,* 39 Md.App. 187, 191–92, 385 A.2d 85 (1978). Appeals from determinations regarding permanency plans raise precisely such concerns.

 In the case before us, there has been no judgment that establishes, conclusively, Damon's care and custody. None of Monica's interests in further prosecuting or defending her rights and interests in obtaining care and custody of Damon have been affected. On the contrary, notwithstanding the change in Damon's permanency plan, the May 7, 1999 Order increased visitation between Damon and his mother and required DHHS to continue reunification services.

The lack of a final judgment is not a complete bar to an appeal. By statute, the legislature has established some exceptions to the final judgment rule. For example, appeals are permitted from certain interlocutory orders pursuant to Md. Cts. & Jud. Proc.Code Ann. § 12–303. Section 12–303(3)(x) provides:

> A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case:

\* \* \*

> (3) An order:

\* \* \*

> (x) Depriving a parent, grandparent, or natural guardian of the care and custody of his child, or changing the terms of such an order.

Section 12–303 is a corollary to the final judgment rule, developed over the years to permit appeals from some seemingly interlocutory orders which deny an absolute constitutional right. *Pulley v. State,* 287 Md. 406, 414–15, 412 A.2d 1244

(1980). The common denominator of these exceptions is the irreparable harm that may be done if a party is required to await a final judgment before entering an appeal. *Flower World of America, Inc. v. Whittington,* 39 Md.App. 187, 192, 385 A.2d 85 (1978).

■ Section 12–303(3)(x) does not apply here. Damon was placed in the care and custody of DHHS on November 8, 1996, and was found to be a CINA on April 21, 1997. An order depriving Monica, temporarily, of the care and custody of Damon was entered on April 21, 1997, when the court "adjudged, ordered, [and] decreed Damon M. to be a ward of the Court" and ordered him "to be placed in a treatment foster home...." The court's later ruling on May 7, 1999, neither established conclusively nor affected any actual change in Damon's custody; DHHS continues to maintain custody of Damon. The May 7, 1999 Order did not deprive Monica of a constitutionally protected right, namely the right to the care and custody of her child. *Santosky v. Kramer,* 455 U.S. 745, 759, 102 S.Ct. 1388, 1397–98, 71 L.Ed.2d 599 (1982); *In re Adoption/Guardianship No. 10941,* 335 Md. 99, 112–13, 642 A.2d 201 (1994). The Order merely amended the permanency plan. The most significant effect of the court's decision to amend the permanency plan is that the court may, but is no longer required, to conduct further review hearings at six month intervals. *See* Md. Cts. & Jud. Proc.Code Ann. § 3–826.1(f)(1)(i) and (ii).

Furthermore, § 3–826.1(b)(1) of the Courts and Judicial Proceedings Article provides:

> Upon the written request of any party or on its own motion, the court may schedule a hearing at any earlier time to determine a permanency plan or to review the implementation of a permanency plan for any child committed pursuant to § 3–820 of this subtitle.

Monica retains the right to request a hearing to review the implementation of Damon's permanency plan at any time. Notwithstanding the change in Damon's permanency plan, Monica has the right to obtain a review of her rights as

Damon's mother, including hearings to change the status of her relationship with him and the right to a hearing to regain custody of Damon. The court's requirements that visitation be increased and reunification efforts be intensified clearly indicate the trial court's intent in issuing the order.

 Finally, the Order is not appealable under the collateral order doctrine, which permits an appeal from an interlocutory order that satisfies the following requirements:

(1) it must conclusively determine the disputed question;

(2) it must resolve an important issue;

(3) it must be completely separate from the merits of the action; and

(4) it must be effectively unreviewable on appeal from a final judgment.

*Montgomery County v. Stevens,* 337 Md. 471, 477, 654 A.2d 877 (1995). The May 7, 1999 Order did not conclusively determine the issue of Damon's custody, the issue of his custody is the central issue before the lower court, and the issue of custody is reviewable on appeal should any action be taken to terminate Monica's parental rights.

**APPEAL DISMISSED.**

**COSTS TO BE PAID BY APPELLANT.**