765 A.2d 624

## In re DAMON M.

## In re Shaunna E.

## In re Brian J. and Tony J.

## In re Marcello K., Lenny M. and Keshya K.

## No. 45, Sept. Term, 2000.

Court of Appeals of Maryland.

Jan. 12, 2001.

Mary J. Pizzo, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioners.

Nancy C. Hopkins, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland and C.J. Messerschmidt, Asst. Atty. Gen., on brief), Baltimore, for respondents.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and LAWRENCE F. RODOWSKY (retired, specially assigned), JJ.

BELL, Chief Judge.

This consolidated appeal, consisting of four cases, involving seven children, all committed to the care and custody of the Montgomery County Department of Health and Human Services (the respondent or the Department), and in foster care for at least one year, presents a single issue: whether a court order amending a permanency plan, determined pursuant to Md.Code (1996, 1998 Repl.Vol., 2000 Supp.) § 3–826.1 of the Courts and Judicial Proceedings Article, and entered after a hearing to determine or review that plan, is an immediately appealable order. In each of the cases, the child or children had been adjudicated, by the District Court of Maryland, sitting in Montgomery County as a Juvenile Court, in need of assistance (CINA), pursuant to Md.Code (1974, 1998 Repl.Vol., 2000 Supp.) § 3–812 of the Courts and Judicial Proceedings Article. In three of the cases, *In Re: Damon M., In Re: Shaunna A.,* and *In Re: Brian and Tony J.,* the court entered its order amending the permanency plan[1] for the

---

**1.** Prior to 1998, the responsibility for developing a permanency plan for a child in foster care was entrusted to the local department of social

affected child or children from reunification with the child's or children's mother to either long term foster care or permanent foster care, after conducting periodic reviews of that plan, as required by § 3–826.1(f).[2] In the case of *In Re: Marcello,*

services. Md.Code (1984, 1991 Repl.Vol., 1995 Cum.Supp.) § 5–525(c) of the Family Law Article. Before 1996, a plan developed by the local department was reviewed by the court, together with the report and recommendation of the Foster Care Review Board, as a part of the disposition review hearing the court was required to conduct. Md. Code (1984, 1991 Repl.Vol.) § 5–544(3) of the Family Law Article. As a result of the amendment of the Juvenile Causes Act in 1996, see Ch. 595, Laws of 1996, the juvenile court was mandated to "hold a hearing to review the implementation of a permanency plan" for each child in foster care within 10 months of the disposition hearing in which the CINA finding was made. Md.Code (1996, 1997 Cum.Supp.) § 3–826.1 of the Courts and Judicial Proceedings Article. It is of interest to note that the statute provided that if the child was to be "continued in placement for a specified period," then the court would have to determine "the extent of compliance with the permanency plan." § 3–826.1(d). The subsequent amendment to § 3–826.1, see ch. 539, Laws of 1998, to make it conform with the Federal Adoption and Safe Families Act of 1997 effected a significant change. Now, the court has the responsibility for determining the permanency plan, § 3–826.1(a)(1) and justifying the placement of children in out of home placements for a specified period or on a long-term or permanent basis, § 3–826.1(d), in addition to conducting periodic, six month reviews. § 3–826.1(f).

2. That section provides:
"(f)(1)(i) Except as provided in subparagraph (ii) of this paragraph, the court shall conduct a hearing to review the permanency plan no less than every 6 months until commitment is rescinded.
"(ii) The court is not required to hold a review hearing every 6 months if the court, at the permanency planning hearing or at a subsequent review hearing, grants guardianship of the child to a relative or other person, or determines that the child shall be continued in permanent foster care or kinship care with a specific caregiver who agrees to care for the child on a permanent basis.
"(2) At the review hearing, the court shall:
"(i) Determine the continuing necessity for and appropriateness of the commitment;
"(ii) Determine the extent of compliance with the permanency plan;
"(iii) Determine the extent of progress that has been made toward alleviating or mitigating the causes necessitating commitment;
"(iv) Project a reasonable date by which a child in placement may be returned home or placed for adoption or legal guardianship;
"(v) Change the permanency plan if a change in the permanency plan would be in the child's best interest; and

*Lenny, and Keshya K.,* the court, pursuant to § 3–826.1(c),[3] determined at the permanency planning hearing the permanency plan for the children, which was adoption. In each case, the mother noted a timely appeal to the Court of Special Appeals. The intermediate appellate court, in *In Re: Damon M.,* 131 Md.App. 449, 749 A.2d 231 (2000), held that the court's order was not a final order and, therefore, dismissed the appeal. By unreported opinions, the Court of Special Appeals dismissed the other appeals on the authority of *In Re: Damon M.* We granted certiorari, see *In Re: Damon M.,* 359 Md. 668, 755 A.2d 1139 (2000), and now reverse.

The petitioners argue that orders, emanating from "a hearing to review the permanency plan" or a permanency planning hearing, that change the permanency plan from reunification with the parent are appealable.[4] Noting the conclusion of the

"(vi) Evaluate the safety of the child and take necessary measures to protect the child.
"(3) Every reasonable effort shall be made to effectuate a permanent placement for the child within 24 months for the date of initial placement."

3. That section provides:
"(c) At the permanency planning hearing for each child in placement, the court shall:
"(1) Determine the permanency plan for the child, including whether the child should be:
"(i) Returned to the parent or guardian;
"(ii) Placed with relatives to whom adoption or guardianship is granted;
"(iii) Placed for adoption;
"(iv) Emancipated;
"(v) Because of the child's special needs or circumstances, continued in placement on a permanent or long-term basis; or
"(vi) Because of the child's special needs or circumstances, continued in placement for a specified period."

4. The petitioners's contention is, at the same time, much broader and much narrower, referring simply to "orders emanating from permanency planning hearings." As we have seen, only the initial hearing following a finding of CINA is a "permanency planning hearing," § 3–826.1(a), the subsequent hearings being "hearings to review the permanency plan," including the commitment itself. § 3–386.1(f). In this appeal, in three of the four cases, the order under review was passed after a review hearing and, in only one, after the permanency planning

Court of Special Appeals in *In re Damon M.,* that there was no final judgment in that case because the trial court's order "neither established conclusively nor effected any actual change in Damon's custody; DHHS continued to maintain custody of Damon," 131 Md.App. at 458, 749 A.2d at 236, they maintain that, even if not final, the orders are appealable pursuant to Md.Code (1974, 1998 Rep. Vol.) § 12–303(3)(x) of the Courts & Judicial Proceedings Article.[5] The petitioners submits:

> "The orders in all the cases at bar clearly affected the terms of the original custody orders, deprived the parents of their rights to have custody immediately or in the foreseeable future, and generated a profound change in the ability of the parents to seek custody. Moreover, in each of the cases, the court, as part of the permanency plan, ordered that placement out of the parent's home be continued, a decree necessarily denying the parent custody. As such, the orders, if not final, were clearly interlocutory orders subject to appeal."

The respondent sees the issue quite differently. It argues that "an order changing the permanency plan for a child in out-of-home placement does not give rise to any of the essential conditions of appealability set forth in § 12–303(3)(x)"; it certainly did not deprive the parent of custody. That, it points out, occurred long before the review hearings and the permanency planning hearing that generated these appeals. Nor, the respondent maintains, does an order changing the permanency plan for a child in out-of-home placement change

---

hearing. Moreover, in each of the cases under review, the order changed the permanency plan from reunification to either foster care, long term or permanent, or adoption. Accordingly we need not, and, so, do not, address whether other orders that the court might pass after such hearings are appealable.

5. Two other bases for appealability of these orders were offered by the petitioners: "the orders address issues which are substantially the same as those generated in review hearings under Md. Rule 11–115(d), the appealability of which has not previously been challenged" and the collateral order doctrine. We find merit in the argument we have referenced and, therefore, will not address the others.

the terms of custody to bring the order within the § 12–303(3)(x). In that regard, the respondent notes that a particular permanency plan does not carry with it a particular level of visitation. It asserts, in any event, that the respondents are not aggrieved by the orders appealed from, their visitation rights having been unaffected thereby; the juvenile court ordered that the petitioners continue to have visitation at a level consistent with the visitation they previously enjoyed. Finally, the respondent disputes the petitioner's assertion that an order changing the permanency plan for a child in out-of-home placement generates "a profound change in the ability of the parents to seek custody." It believes that short of a termination of their parental rights, there is no legal impediment to the petitioners' seeking and obtaining custody of their children.

Generally, appeals may be taken only from final judgments. *See* Md.Code (1974, 1998 Repl.Vol.) § 12–301 of the Courts & Judicial Proceedings Article, which provides that "[A] party may appeal from a final judgment entered in a civil . . . case," whether entered in the exercise of original, special, limited, or statutory authority, unless "expressly denied by law." *See also* Md. Rule 2–602. There are exceptions to the final judgment appealability rule, however. Section 12–303 is one. It permits a party to appeal certain enumerated interlocutory orders. Relevant for our purposes is § 12–303(3)(x), which provides:

"A party may appeal from any of the following interlocutory orders entered by a circuit court in a civil case:

\* \* \* \*

"(3) An order:

\* \* \* \*

"(x) Depriving a parent, grandparent, or natural guardian of the care and custody of his child, or changing the terms of such an order."

\* \* \* \*

Section 3–826.1 requires the court, not later than 11 months after a child found to be in need of assistance has been placed in foster care, *see also* Md.Code (1989, 1991 Repl.Vol., 1997 Cum Supp.) § 5–501(m) of the Family Law Article, to hold a permanency planning hearing to determine the permanency plan for that child. § 3–826.1(a)(1). At that hearing, for each child in placement and in determining the plan, the court is required to make certain decisions and findings, § 3–826.1(c), specifically, whether the child should be: returned to the parent or guardian, § 3–826.1(c)(1)(i); placed with relatives to whom adoption or guardianship is granted, § 3–826.1(c)(1)(ii); placed for adoption, § 3–826.1(c)(1)(iii); emancipated, § 3–826.1(c)(1)(iv); or because of the child's special needs or circumstances, continued in placement on a permanent or long-term basis or for a specified period. § 3–826.1(c)(1)(v) and (vi). There are restrictions on the court's ability to continue a child in placement because of the child's special needs or circumstances. § 3–826.1(d). That section prohibits the court from using that option

"unless it finds that the agency to which the child is committed has documented a compelling reason for determining that it would not be in the best interest of the child to:

"(1) Return home;

"(2) Be referred for termination of parental rights; or

"(3) Be placed for adoption or guardianship with a specified and appropriate relative or legal guardian willing to care for the child."

Section 3–826.1(f) mandates periodic reviews of the permanency plan by the court. Subsection (f)(1)(i) provides that such reviews will be "no less frequently than every six months until commitment is rescinded." If, however, at the permanency planning hearing or a subsequent review hearing, the court, *inter alia,* orders a child continued in permanent foster care, the court is no longer required to hold the review hearings at six month intervals. Subsection (f)(1)(ii). As is

true of the initial permanency planning hearing, the court must make some determinations at the hearing to review the permanency plan. § 3–826.1(f)(2). Among other things, in addition to determining whether the commitment remains necessary and appropriate, subsection (f)(2)(i), and evaluating the progress made toward alleviating or mitigating the causes of the commitment, subsection (f)(2)(iii), the court is required to "[d]etermine the extent of compliance with the permanency plan," subsection (f)(2)(ii), and to change it "if a change in the permanency plan would be in the child's best interest." Subsection (f)(2)(v).

The permanency plan is an integral part of the statutory scheme designed to expedite the movement of Maryland's children from foster care to a permanent living, and hopefully, family arrangement. It provides the goal toward which the parties and the court are committed to work. It sets the tone for the parties and the court and, indeed, may be outcome determinative. Services to be provided by the local social service department and commitments that must be made by the parents and children are determined by the permanency plan. And, because it may not be changed without the court first determining that it is in the child's best interest to do so, the permanency plan must be in the child's best interest. These are the reasons, no doubt, that the court is charged with determining the plan and with periodically reviewing it, evaluating all the while the extent to which it is being complied with.

It is true, of course, that a parent will have lost custody before a permanency plan will have been developed. Nevertheless, once determined, because the permanency plan sets out the anticipated permanent placement, to the achievement of which the "reasonable efforts," required by § 3–826.1(f)(3), must and will be directed, it can not be totally divorced from the issue and, in point of fact and in a real sense, actually is a part of it. Moreover and in fact, when the plan is reunification, there necessarily is, on the part of the court and, certainly, the parent, an expectation—more than a hope—that the parent will regain custody. That is, after all, the point of

the plan and the reasonable efforts, including the provision of services to the family, so necessary to achieving compliance.

The amendment of the permanency plan to long-term or permanent foster care and adoption is a change in the terms of the custody order, whenever it was passed. The respondent acknowledges as much when it argues: "In the absence of the permanency planning orders appealed here, the previous commitment orders would have remained in effect and all of these children would have remained in the Department's custody."

The respondent asserts that the majority of states that have addressed this issue have concluded that an order approving or revising a permanency plan is not appealable. In support, it cites *Rita J. v. Arizona Dept. of Economic Security*, 196 Ariz. 512, 1 P.3d 155 (App.2000); *In re Interest of Sarah K.*, 258 Neb. 52, 601 N.W.2d 780 (1999); *In the Interest of W.D. III and M.D.*, 562 N.W.2d 183 (Iowa, 1997) and *In the Interest of H.R.*, 883 P.2d 619 (Colo.App.1994). In three of the cases, the court held that, to be appealable, the order has to be final, see *In the Interest of W.D. III and M.D.*, 562 N.W.2d at 185–86; *Rita J.*, 1 P.3d at 158; *In the Interest of H.R.*, 883 P.2d at 620, and in each case the order sought to be appealed was determined to be interlocutory, *In the Interest of W.D. III and M.D.*, 562 N.W.2d at 185; *Rita J.*, 1 P.3d at 158; *In the Interest of H.R.*, 883 P.2d at 621. There apparently was no counterpart to § 12–303(3)(x) in any of the States.

In *In re Interest of Sarah K.*, after pointing out that to be appealable, a juvenile court order must affect a substantial right, i.e. one that is an essential legal right, the court opined:

"[W]here an order from a juvenile court is already in place and a subsequent order merely extends the time for which the previous order is applicable, the subsequent order by itself does not affect a substantial right and does not extend the time in which the original order may be appealed.... Thus, a dispositional order which merely continues a previous determination is not an appealable order...."

601 N.W.2d at 783–84. The court held that the order sought to be appealed "effect[ed] no change in the parents' status or the plan to which the parents and [the child] were previously subject," *id.* at 785, and, therefore, was not appealable.

Clearly, the cases are distinguishable from the case sub judice. We hold that an order amending a permanency plan calling for reunification to foster care or adoption is immediately appealable. In so holding, we are not unmindful of the concern that there not be delay in these cases and that appeals will slow the realization of permanency for children whose permanency plan amendments are appealed. We note, however, Md. Rule 8–207(b) and suggest that, to the extent possible, appeals to the Court of Special Appeals from these kinds of orders proceed on an expedited basis.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE RESPONDENT.*