881 A.2d 1174

**In re KARL H. and Anthony H.**

**Nos. 2623, 2624 Sept. Term, 2004.**

Court of Special Appeals of Maryland.

Sept. 1, 2005.

538

Martha Weisheit (Nancy S. Forster, Public Defender, on the brief), Baltimore, for appellant.

Seri A. Wilpone, Hughesville, C.J. Messerschmidt (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for appellee.

Panel: HOLLANDER, ADKINS, SHARER, JJ.

ADKINS, J.

Appellants Karl and Lisa H. challenge the Circuit Court for Charles County's orders establishing concurrent permanency plans of reunification and adoption for their sons, Karl, Jr. and Anthony H., who had previously been adjudicated children in need of assistance ("CINA"). Because we conclude that there

is no final judgment or appealable interlocutory order in this case, we shall dismiss the appeal.

## FACTS AND LEGAL PROCEEDINGS

Karl Jr., age seven, and his brother, Anthony, age six, are the children of Karl and Lisa H. The H. family came to the attention of the Charles County Department of Social Services ("CCDSS") on March 5, 2004, when the boys were five and three, respectively, because the H.'s were homeless and living out of their vehicle. The CCDSS caseworker assigned to the family enabled them to use the agency's shower and laundry at that time. After the family moved into the White House Motel, CCDSS paid their back rent and provided vouchers for an additional week's rent.

On March 25, 2004, a family friend reported to CCDSS that Mrs. H. had dropped the boys off at her home the preceding day, but had failed to return for them. That day, the family's caseworker spoke with Mrs. H., who explained that she had separated from Mr. H., and had obtained a protective order against him, which prohibited contact between him and either herself or the boys. Mrs. H. stated that she could not care for the boys at that time.

Mr. H. met with the caseworker the next day and confirmed the existence of the protective order. He also informed the caseworker that in the past he had been convicted of both domestic violence against Ms. H. and murder. Mr. H. admitted to a history of substance abuse and told the caseworker that he had relapsed, having used crack cocaine the previous evening.

The boys were then placed in emergency shelter care, and the Circuit Court for Charles County, sitting as a juvenile court, continued shelter care on March 29, 2004. The juvenile court ordered Mr. and Mrs. H. to participate in psychological and substance abuse evaluations, and to follow up with any treatment recommendations. Mr. H. subsequently made an appointment to register for substance abuse treatment, but he did not arrive at the appointed time.

Adjudicatory and disposition hearings were held on May 7, 2004, during which Mr. and Mrs. H. consented to a finding that the boys were CINA. The juvenile court again ordered both parents to participate in substance abuse and mental health evaluations, including an assessment of both parents' mental capacity to care for their children, and to follow up with any treatment recommendations. In addition, the juvenile court ordered that Mr. and Mrs. H. submit weekly to urinalyses.

Over the next six months, Mr. and Mrs. H. failed to make significant progress toward addressing their substance abuse and mental health issues. In November 2004, however, Mr. and Mrs. H. enrolled in an eighteen-month Crisis Watch and Counseling program at the New Life Advocacy Council, which provided substance abuse counseling and parenting skills training.

On December 10, 2004, the juvenile court conducted an initial permanency planning hearing for both boys. At the time of the hearing, the boys remained in the foster home in which they had been placed in March, and appeared to have adjusted well, having made friends in the community and at school. The juvenile court concluded that Mr. and Mrs. H. were not yet able to care for their children at that time, as they still had "serious issues of their own" that had yet to be addressed. Accordingly, the juvenile court ordered a concurrent plan of reunification and adoption for the boys. Mr. and Mrs. H. separately noted timely appeals,[1] and present the following question for our review:

> Was it an abuse of discretion for the juvenile court to adopt a permanency plan of reunification concurrent with adoption when the parents were actively seeking treatment for their problems, and the children had only been out of their care for nine months?

We do not reach this issue, however, because we conclude that the juvenile court's orders adopting concurrent perma-

---

1. All appeals have been consolidated before this Court.

nency plans of reunification and adoption are not final judgments or appealable interlocutory orders. Accordingly, we must dismiss the appeal.

## DISCUSSION

As a threshold matter, appellees Karl, Jr. and Anthony H. claim that the juvenile court's orders adopting concurrent permanency plans of reunification and adoption are not appealable orders in light of the recent Court of Appeals decision in *In re Billy W.*, 386 Md. 675, 874 A.2d 423 (2005)(holding that court orders continuing permanency plans are neither final judgments nor appealable interlocutory orders). For the following reasons, we agree.

### Final Judgments

 Appeals generally may only be taken from a final judgment of the trial court. *See* Md.Code (1973, 2002 Repl. Vol., 2004 Cum.Supp.), § 12–301 of the Courts and Judicial Proceedings Article ("CJP")("a party may appeal from a final judgment entered in a civil . . . case by a circuit court"). A trial court's order constitutes a final judgment if it either determines and concludes the rights of the parties involved or denies a party the means to " 'prosecut[e] or defend[ ] his or her rights and interests in the subject matter of the proceeding.' " [2] *In re Billy W.*, 386 Md. at 688, 874 A.2d 423 (citation omitted). "In considering whether a particular court order or

---

2. Although not an issue in this case,

> [t]here are instances when a trial court's order constitutes a final appealable judgment even though the order fails to settle the underlying dispute between the parties. *See Ferrell v. Benson*, 352 Md. 2, 6, 720 A.2d 583 (1998)(holding that order transferring case to district court was a final and appealable judgment), and cases cited therein; *Moore v. Pomory*, 329 Md. 428, 432, 620 A.2d 323 (1993)(determining that trial court's order dismissing complaint without prejudice was a final judgment); *Horsey v. Horsey*, 329 Md. 392, 401, 620 A.2d 305 (1993)(concluding that trial court's order dismissing former husband's contempt petition against former wife and directing arbitration of alimony dispute was a final appealable order because it had the effect of putting the parties out of court).

*In re Billy W.*, 386 Md. 675, 689, 874 A.2d 423 (2005).

ruling constitutes an appealable [final] judgment, we assess whether any further order is to be issued or whether any further action is to be taken in the case." *Id.* (citation omitted).

■ Here, the juvenile court's orders are not final judgments because they fail to conclusively determine the custody of Karl, Jr. and Anthony. Likewise, Mr. and Mrs. H's rights in further prosecuting or defending their interests in obtaining the custody of their children were not affected by the court's orders. Moreover, the juvenile court's orders are not final judgments when we consider whether any further action was to be taken in the case. CJP section 3–823(h) requires the juvenile court to conduct periodic review hearings of permanency plans at least every six months. Indeed, at the close of the permanency plan hearing here, the juvenile court scheduled a review hearing for June 17, 2005.

## Appealable Interlocutory Orders

■ "An order that is not a final judgment may qualify as an interlocutory order, but ordinarily is not appealable unless it falls within one of the statutory exceptions set forth in [CJP section 12–303]." *Id.* at 689, 874 A.2d 423. Mr. and Mrs. H. argue that the court orders here are appealable interlocutory orders under CJP section 12–303(3)(x), which allows a party to appeal from an interlocutory order that "[d]epriv[es] a parent ... of the care and custody of his child, or chang[es] the terms of such an order[.]"

The Court of Appeals recently addressed a similar issue in *In re Billy W.* In that case, the mother of four children, all of whom had been adjudicated CINA, sought review of a juvenile court order passed after a permanency plan review hearing, which maintained the previously adopted permanency plans.[3] The Court of Appeals held that the orders continuing the permanency plans were not final judgments or appealable

---

3. Three of the children's permanency plans were for reunification with the mother, while the fourth child's permanency plan was a concurrent plan of reunification and adoption.

interlocutory orders, and thus, were nonreviewable. *See id.* at 683, 874 A.2d 423.

In determining whether the orders were appealable interlocutory orders under CJP section 12–303(3)(x), the Court recognized that, "to be appealable, court orders arising from the permanency plan review hearing must operate to either deprive [the mother] of the care and custody of her children or change the terms of her care and custody of the children to her detriment." *Id.* at 691–92, 874 A.2d 423 (citations omitted). The Court held that the orders were not appealable under CJP section 12–303(3)(x) "because the orders did not detrimentally affect [the mother's] custody rights or visitation with the children, even though [the mother] had sought full custody." *Id.* at 692, 874 A.2d 423. In so holding, the Court recognized that "[the mother's] custodial rights had been abrogated when the children were declared in need of assistance and committed to DSS's custody, but not when the trial court maintained the permanency plans for the children, which did not adversely affect [the mother's] parental rights." *Id.* at 693, 874 A.2d 423.

 We are persuaded that this case is analogous to *In re Billy W.*, because the orders adopting a concurrent permanency plan of reunification and adoption here did not detrimentally affect Mr. or Mrs. H's custody rights.[4] Like the mother's rights in *In re Billy W.*, Mr. and Mrs. H's custody rights were abrogated when Karl, Jr. and Anthony were adjudicated CINA and committed to CCDSS's custody,[5] but not when the juvenile court adopted the concurrent permanency plans.

---

**4.** Mr. and Mrs. H.'s visitation with the children also was not detrimentally affected by the court orders. *See In re Billy W.*, 386 Md. at 692, 874 A.2d 423. At the permanency plan hearing, CCDSS recommended that they be responsible for arranging visitation. Mr. H.'s counsel requested that visitation occur at least twice a week. The juvenile court ultimately ordered CCDSS to arrange visitation, and stated during its ruling from the bench that "[v]isitation will be supervised. It will be liberal and frequent. If it can be arranged to be twice a week, that's great."

**5.** Mr. and Mrs. H. consented to a finding that the boys were CINA.

Mr. and Mrs. H. argue that their parental rights were detrimentally affected because the court ordered permanency plans of adoption, albeit concurrent with reunification, which in turn required CCDSS to file petitions for guardianship for both boys. *See* CJP § 3–823(g)(1)(requiring DSS to file a petition for guardianship according to Title 5, Subtitle 3 of the Family Law Article when the court orders a permanency plan of adoption). Mr. and Mrs. H. claim that because the orders "set in motion the procedures for termination of parental rights," their "opportunity for reunification with their children" was diminished. We do not agree with Mr. and Mrs. H.'s characterization of the court orders at issue.

■ After the court ordered concurrent plans of reunification and adoption, CCDSS was required to file guardianship petitions for both Karl, Jr. and Anthony, pursuant to CJP section 3–823(g)(1).[6] At this stage in the guardianship proceedings, however, Mr. and Mrs. H.'s custodial rights had not been detrimentally affected. Ordering the necessary **preliminary** steps toward the possible outcome of terminating parental rights did not deprive Mr. and Mrs. H. of the care and custody of their children such that the juvenile court orders were appealable interlocutory orders under CJP section 12–303(3)(x).[7] Rather, the juvenile court's orders simply imposed additional work on CCDSS to lay the foundation for potential adoption proceedings, including filing the guardianship petitions, serving Mr. and Mrs. H. with required notice of the guardianship proceedings, *see* Md.Code (1984, 2004 Repl.Vol.), section 5–322(b) of the Family Law Article, and seeking to

---

6. CCDSS filed the petitions for guardianship on April 5, 2005, approximately four months after the permanency plan hearing. Under Md. Code (1984, 2004 Repl.Vol.), section 5–317(d) of the Family Law Article ("FL"), the circuit court then would have had 180 days to rule on the petition.

7. Likewise, the orders are not appealable under the collateral order doctrine because they are subject to review and change, and do not conclusively determine the custody of the boys. *See In re Billy W.,* 386 Md. at 692, 874 A.2d 423; *In re Samone H.,* 385 Md. 282, 315 n. 13, 869 A.2d 370 (2005).

identify and approve a qualified family for adoption, *see* CO-MAR 07.01.12.04(C)(2). Practically, this "dual-track" planning makes sense. If future events and circumstances demonstrate that adoption, and not reunification, is in the best interests of Karl, Jr. and Anthony, the earlier steps taken by CCDSS should hasten the goal of achieving a positive and stable home for the children.[8]

We are not persuaded by Mr. and Mrs. H.'s argument that the controlling case here is *In re Damon M.*, 362 Md. 429, 765 A.2d 624 (2001). In that case, the Court of Appeals held that orders amending a permanency plan from reunification to either long-term or permanent foster care, or adoption, entered after a hearing to determine or review that plan, were immediately appealable interlocutory orders under CJP section 12–303(3)(x). *See id.* at 438, 765 A.2d 624. The Court reasoned that "[t]he amendment of the permanency plan to long-term or permanent foster care and adoption is a change in the terms of the custody order." *Id.* at 437, 765 A.2d 624.

In contrast to this case, in *In re Damon M.*, the permanency plans were amended from reunification to either long-term foster care or adoption. The juvenile court orders terminated reunification efforts, and thus, detrimentally affected the parent's custodial rights.

**APPEAL DISMISSED. COSTS TO BE PAID BY APPELLANTS.**

---

**8.** Mr. and Mrs. H. concede that CCDSS has the authority to adopt concurrent permanency plans of reunification and adoption. *See* FL § 5–525(d)(3)("Reasonable efforts to place a child for adoption or with a legal guardian may be made concurrently with the reasonable efforts [to reunify the family]"). *See also* COMAR 07.02.11.13A (requiring DSS to develop written permanency plans, including concurrent plans, within two months of placement with DSS). Mr. and Mrs. H. do not address why the juvenile court would be precluded from ordering CCDSS to implement a concurrent permanency plan that CCDSS itself has the inherent power to adopt.