HAYMAN, SR., ET AL. *v.* ST. MARTIN'S EVAN-GELICAL LUTHERAN CHURCH

[No. 80, September Term, 1961.]

*Decided January 12, 1962*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and SYBERT, JJ.

*Eugene M. Childs,* with whom were *Childs & Bald* on the brief for appellants.

*Theodore G. Bloom,* with whom was *Albert J. Goodman* on the brief for appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is a suit for a declaratory judgment, brought by the minority faction of a church congregation split by a schism, to determine which group has the right to church property and to direct the affairs of the church corporation. The only issues before us on the merits of the controversy are: (1) whether the majority had the right, after a vote in accordance with its by-laws and the provisions of Code (1957), Art. 23, §§ 264 and 265, to withdraw from the "parent" organization, the Evangelical and Reformed Church, and (2) whether the minority or the majority has the right to control the church corporation and its assets after such withdrawal. The Circuit Court resolved these questions in favor of the majority.

The church involved, now St. Martin's Evangelical Lutheran Church of Annapolis (hereinafter "St. Martin's"), was established in April, 1874, as the German Evangelical Lutheran Church. On June 20, 1874, it filed articles of incorporation, valid for 40 years, in the Circuit Court for Anne Arundel County; and when this charter expired in 1914 the congregation continued as an unincorporated religious society affiliated with the German Evangelical Synod of North America. In 1934 this German Evangelical Synod of North America con-

solidated with the Reformed Church and the resulting body became the Evangelical and Reformed Church. St. Martin's continued to be affiliated with this group. In 1949 St. Martin's was incorporated pursuant to Art. 23, §§ 275-286 Code (1939) and 1947 Supp., now Code (1957), Art. 23, §§ 256-270, and its charter then adopted and by-laws adopted thereunder were in force when the transactions here involved took place. In 1957 the Evangelical and Reformed Church and the General Council of the Congregational Christian Churches decided to form the United Church of Christ. An interim governing document, the "Basis of Union", was adopted until a constitution and by-laws were approved (as the appellee states) on July 4, 1961, during the pendency of this appeal. Both the Basis of Union and the constitution and by-laws later adopted provided that the basic unit was the local church, producing a congregational polity under which each local church had the right to adopt its own charter and by-laws and control its own property.

Initially, the congregation of St. Martin's favored the consolidation under the "Basis of Union", and instructed its delegation to vote in favor of it at the Synodical Meeting. The council of St. Martin's also voted to change the name of the corporation to "St. Martin's United Church of Christ", but this change of name was never filed with the State Tax Commission (or its successor) pursuant to Art. 23, §§ 264(4) and 269, Code (1957). Upon receipt of a copy of the proposed constitution for the United Church of Christ, the congregation decided to reappraise this decision in light of the doctrines of belief set forth therein. In March, 1960, a special meeting of the church corporation was convened in accordance with its charter and by-laws and pursuant to Art. 23, §§ 264, 265 Code (1957) to vote on the question whether St. Martin's would become a member of the United Church of Christ. By a vote of 173 to 34 the congregation decided to sever its relationship with the Evangelical and Reformed Church and thereby to remove itself from the consolidation of that body and the General Council of Congregational Christian Churches into the United Church of Christ, and to apply for affiliation with the United Lutheran Church. The plaintiff-appellants here represent the thirty-four minority voters who favored

the consolidation. The decree of the Circuit Court ordered the refund of their contributions to a building fund, and there is no cross-appeal by the appellee on that score.

When St. Martin's was incorporated in 1949 Part I, Art. IV of its by-laws provided:

"This congregation is, and shall be, a member of the Evangelical and Reformed Church or its successors. Withdrawal from the Church can take place only if two-thirds of the voting numbers of the congregation present at a meeting called for this purpose shall favor such withdrawal."

This is the provision under which the March, 1960 meeting was called and the vote to withdraw from the Evangelical and Reformed Church was taken. It is conceded that all requirements as to notice of and eligibility to vote at that meeting were complied with. However, appellants contend that Part I, Art. IV of St. Martin's by-laws adopted in 1949 is invalid. Neither these by-laws nor the charter of 1949 were submitted to the Evangelical and Reformed Church for approval and appellants contend, therefore, that the withdrawal provision was invalid under Part II, Art. 10 of the by-laws of The Evangelical and Reformed Church.

Art. 10 provides:

"Whenever a congregation desires to become an incorporated body, a draft of the proposed Articles of Incorporation and the constitution of the congregation shall be submitted to the Synod, or to the Synodical Council, for approval before the charter is presented to the civil authorities. A charter shall not be approved that does not bind the congregation to be an organic member of the Evangelical and Reformed Church, and to be governed by its constitution and by-laws. In the charter the Consistory or Church Council shall be constituted the trustees of the congregation."

In addition, appellants claim that the provisions of Part II, Art. 13, of the by-laws of the Evangelical and Reformed

Church which state that the "property of the congregation
* * * shall be under the care of the trustees * * * who shall
hold the property as a sacred trust for the congregation * * *,"
and the general law governing parent and local church bodies,
gives them the right to the church property because the Synod
has recognized the minority to be the actual church congregation of St. Martin's.

At the outset we are presented with a motion to dismiss
the appeal by the appellee on the ground of mootness. Appellee argues that whatever the validity of the 1949 charter provision for withdrawal under the charter and by-laws provisions of the Evangelical and Reformed Church, the new constitution of the United Churches of Christ provides specifically for local autonomy and local control of property. Appellee says that even should this court reverse the decree below, all that would occur would be a new vote for withdrawal with the same result as the previous one, which would clearly be allowed by the new charter of the United Church of Christ. We think the motion is ill founded. Even conceding that appellee's projection of events would turn out to be true, the doctrine of mootness applies to a situation in which past facts and occurrences have produced a situation in which, without any future action, any judgment or decree the court might enter would be without effect. That, we think, is not the case here; and without laboring the point, we deny the motion to dismiss.

The appellants have urged before us, and the appellee has countered, a number of arguments based upon the "implied trust doctrine" (see Zollman, *American Church Law*, Ch. 7 (1933 ed.)), estoppel, and doctrines relating to the distinction between the presbyterian and congregational forms of church government. We think, however, that the provisions of the by-laws of the Evangelical and Reformed Church and of St. Martin's and the provisions of Art. 23, §§ 256-270 Code (1957) are sufficient to dispose of this case without reaching some of these broader questions.

Appellants' first argument is that (1) the polity of the Evangelical and Reformed Church is presbyterian in character

rather than congregational; therefore, the parent body's rules control, and (2) the relationship between congregation and such a parent church is contractual; therefore the provisions of the local church's by-laws fall when inconsistent with those of the parent body. We think the answer to this argument is contained in the by-laws of the Evangelical and Reformed Church themselves, adopted in 1934. Part II, Art. 16 thereof provides:

> "If a congregation or a Synod withdraws from the jurisdiction of the Evangelical and Reformed Church, the property of said congregation or Synod shall revert to the charge and control of the judicatory immediately above, in the case of a congregation to the Synod, and of a Synod to the General Synod. *This paragraph shall not apply, however, to congregations which were not on June 26, 1934, subject to or governed by laws regularly enacted and then in force, providing for such reversion of congregational property, nor shall this paragraph apply to congregations associated with the Church only through their pastors, if such congregations become members of the Church within ten years after the adoption of the constitution.*" (Italics ours.)

Counsel have stipulated that:

> "The constitution and by-laws of the Evangelical Synod of North America, introduced in evidence as Defendant's Exhibit I, contained no provision either permitting or prohibiting withdrawal of a local church from the synod, or referred in any way to disposition of local church property in the event of such withdrawal."

In 1934, St. Martin's was a member of the Evangelical Synod of North America, which consolidated with the Reformed Church. This being the case, the exception in Art. 16 takes St. Martin's out of the provision therein that its property would "revert" to the parent church.

We think also that the argument made by the appellants that the by-law provision for withdrawal by St. Martin's adopted in 1949 was invalid because not approved by the Evangelical and Reformed Church is without merit. It is true that Part II, Art. 10 of the by-laws of the Evangelical and Reformed Church, *supra,* provides that when a congregation decides to incorporate, the proposed charter and by-laws must be approved and that a charter "shall not be approved that does not bind the congregation to be an organic member of the Evangelical and Reformed Church * * *." Whatever the meaning of being an "organic member" is, we think that it must be read together with Part II, Art. 16 of those by-laws, *supra.* That article provides that St. Martin's is excepted from its specific provisions that when a congregation withdraws its property reverts to the parent church organization. The language of Art. 16 clearly contemplates that *all* congregations may withdraw. It follows that by the very terms of the by-laws, the parent church would have had no basis upon which to refuse approval of the charter and by-law provisions that St. Martin's adopted under the laws of this state in 1949 because of the possibility of withdrawal without forfeiture of property. Read otherwise, the "approval" requirement of Art. 10 would render nugatory the express proviso of Art. 16. The mere fact that St. Martin's did not submit its charter for "approval" is, therefore, of no moment at least insofar as the withdrawal provisions are concerned. Indeed, even if there were no valid 1949 charter, it is difficult to see how the property of St. Martin's would be taken out of the operation of the proviso in Art. 16.

Our conclusions, we think, are also supported by the provisions of Art. 14, Part II of the By-Laws of the Evangelical and Reformed Church. That article requires approval by the Synod of any proposed union of two or more congregations into a single pastoral charge and any subsequent withdrawal therefrom. Art. 16, at issue here, requires no such approval for *withdrawal* of a congregation from the Evangelical and Reformed Church, as the majority in this case did. The negative inference is quite strong that no approval is needed for action taken under Art. 16; and, indeed, as we have said

above, a requirement for such approval would be inconsistent with the very terms of Art. 16.

In short, we find no conflict between the charter and by-laws of the Evangelical and Reformed Church and those of St. Martin's which provide for the withdrawal of the latter body from the former.

Appellants' second main argument is equally without merit and is, in fact, sufficiently met by what we have already said. It is quite a leap from the by-law provision, that the property of a local congregation is to be held "in a sacred trust for the congregation" to the view that the minority, therefore, has the right to the property. It seems clear that the "congregation" means all the persons entitled to vote at the meetings of the Church. And, as has been stipulated here, there was no infirmity in the notices given for the meeting of March, 1960 and the right to vote thereat. The congregation duly elected trustees pursuant to Art. 23, § 256, Code (1957); and under § 257 the corporation owns all the property and the corporation is managed by the trustees elected by the congregation. The very terms of the by-laws of the Evangelical and Reformed Church to the effect that the property is to be held in a sacred trust for the congregation, rather than for worship in accordance with some particular set of doctrines, or in accordance with the Evangelical and Reformed Church's, or its successors', doctrines, seems conclusive of the issue. The fact is, that, as is demonstrated by the discussion of Art. 16 of Part II of the by-laws of the Evangelical and Reformed Church, St. Martin's was in a congregational, rather than a presbyterial, relationship with that body. When the congregation met in accordance with its validly adopted by-law and the majority voted to withdraw, it instructed the trustees that they were no longer a part of the Evangelical and Reformed Church. The trustees control the church corporation which controls the property. Code (1957), Art. 23, § 257. In the absence of evidence to show that any restriction in the deeds to St. Martin's properties prevents such action on the part of the trustees, there can be no valid attack upon the action taken by the congregation. And, as has been seen, even assuming *arguendo* a "contractual" relation between the parent church

and the local church in which the parent church is supreme, the by-laws of the Evangelical and Reformed Church do not prohibit the action taken here.

The appellee has also argued, and Judge Duckett held below, that since St. Martin's is validly incorporated under Art. 23, §§ 256-270, Code (1957), the provisions of its charter and by-laws were superior to those of the Evangelical and Reformed Church. *District Grand Lodge No. 5 v. Jedidjah Lodge No. 7,* 65 Md. 236, 3 A. 104; *Goodman v. Jedidjah Lodge No. 7,* 67 Md. 117, 9 A. 13, 13 A. 627. In view of what has already been said, it is unnecessary to discuss this phase of the case.

> *Motion to dismiss appeal denied; decree affirmed, costs to be paid by appellants.*