65 A.3d 679

**In re ADOPTION/GUARDIANSHIP OF CROSS H.**

**No. 78, Sept. Term, 2011.**

Court of Appeals of Maryland.

April 29, 2013.

Nenutzka C. Villamar, Assistant Public Defender, (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for Petitioner.

Ann M. Sheridan, Assistant Attorney General (Douglas F. Gansler, Attorney General of Maryland, Baltimore, MD), on brief, Constance J. Ridgway, Wakefield & Ridgway, P.A., Woodstock, MD, for Respondent.

Argued before BELL, C.J., HARRELL, GREENE, ADKINS, BARBERA, ALAN M. WILNER, (Retired, specially assigned), DALE R. CATHELL, (Retired, specially assigned), JJ.

PER CURIAM ORDER.

The Court having granted the petition for writ of certiorari and upon consideration of the briefs, record, oral arguments, the motion for issuance of order of affirmance and mandate filed by the State and the answer to the motion filed thereto, in the above entitled matter, it is this 29th day of April, 2013

ORDERED, by the Court of Appeals of Maryland, a majority of the Court concurring, that the writ of certiorari and the motion be, and they are hereby, dismissed as moot.

BELL, C.J., and GREENE, J., dissent.

Dissenting opinion by BELL, C.J., which GREENE, J. joins.

We are asked to decide, in this case, whether, when the propriety of the order, entered in a child in need of assistance (CINA) case, and pursuant to which the termination of paren-

tal rights (TPR) proceedings are authorized, is the subject of a timely and properly filed appeal, it is permissible for a circuit court to pursue such proceedings when the appeal, which was filed by the parties whose parental rights are at stake, is pending in an appellate court. The majority declines to reach the merits of this issue, concluding that the matter is moot. While I, and, indeed, the petitioners, agree with the majority that the case is moot, it is nonetheless my opinion that this Court is authorized, and, more to the point, should exercise its discretion to decide this matter. It presents an issue which is likely to recur frequently and, because of the procedural timelines involved, one that likely will evade future review. Accordingly, I dissent.

## I.

The petitioners, Virginia H. and Aaron R., are the parents of Cross H., who was born on August 28, 2007 at Johns Hopkins Hospital. Cross H. was born prematurely, and with several health complications, including prenatal exposure to the HIV virus. Virginia H., who was homeless at the time of Cross H.'s birth, has been diagnosed with, and hospitalized for, multiple psychiatric conditions. She also has a history of drug and alcohol use, which likely exposed Cross H., prenatally, to those substances. Shortly after her son's birth, Virginia H. was admitted to the psychiatric unit of Johns Hopkins Hospital. She left treatment prematurely due to a disagreement with the medical staff concerning the proper course of treatment for her. The other petitioner, Aaron R., also has a substance abuse problem, and has been convicted on more than one occasion for drug-related crimes.

Cross H. was transferred to Mt. Washington Hospital on September 10, 2007, and remained there until October 3, 2007. On the day of his release, he was determined, by the Circuit Court for Howard County, to be a child in need of assistance ("CINA"), and, as a result, committed to the legal custody of the Howard County Department of Social Services ("the Department"). He was subsequently placed in foster care, with a permanency plan of non-relative adoption.

In January, 2009, Aaron R.'s paternity of Cross H. was confirmed, at which time Cross H.'s permanency plan was changed to reflect that the objective of the plan was reunification with his father. When, however, Mr. R. acknowledged that he was not a viable placement option for his son, at the petitioners' request and in order to explore all possible relative placement options for Cross H., the Circuit Court, sitting as a juvenile court, ordered the Department to conduct both a home study and a bonding study involving Cross's birth parents, his foster parents, and his paternal grandmother, Barbara J. Based on the findings of the bonding study, the juvenile master recommended that Cross H.'s permanency plan be changed back to non-relative adoption.

Only Virginia H. filed exceptions to the permanency plan, pursuant to which the Circuit Court conducted an exceptions hearing, spanning 4 days, on December 7 and 16, 2009, and on February 17 and 18, 2010. Following the hearing, on March 26, 2010, the juvenile court entered an order overruling the mother's exceptions, and affirming the juvenile master's recommendation for a permanency plan of non-relative adoption. Virginia H. timely noted an appeal of this order to the Court of Special Appeals.[1]

---

1. As a general principle, appellate courts are limited, by statute, to hearing only those appeals that proceed from final judgments. CJ § 12–301; *Smith v. Taylor*, 285 Md. 143, 146, 400 A.2d 1130, 1132 (1979); *U.S. Fire Ins. Co. v. Schwartz*, 280 Md. 518, 521, 374 A.2d 896, 898 (1977), overruled on other grounds, *Dep't of Pub. Safety & Corr. Servs. v. LeVan*, 288 Md. 533, 544, 419 A.2d 1052, 1057 (1980). See also *Rohrbeck v. Rohrbeck*, 318 Md. 28, 41, 566 A.2d 767, 773 (1989) (defining an appealable judgment as one which is "so final as to either determine and conclude the rights involved or to deny the appellant the means of further prosecuting or defending his or her rights and interests in the subject matter of the proceeding."). Though we have recognized that court orders arising from permanency planning hearings do not meet the finality requirements, *In re Billy W.*, 386 Md. 675, 689, 874 A.2d 423, 431 (2005), this Court has articulated a limited exception to the rule. Specifically, in *In re Damon M.*, 362 Md. 429, 438, 765 A.2d 624, 628 (2001), we held that "an order amending a permanency plan calling for reunification to foster care or adoption is immediately appealable." *Id.* We clarified this exception in *In re Samone H.*, making clear that appealability was limited to those CINA orders which adversely affect the parental rights of a party, or change

While the CINA appeal was pending, the Department, consistent, and in compliance, with the Circuit Court's order, filed, in the Circuit Court, as to each parent, a Petition to Terminate Parental Rights ("TPR"), and for Guardianship With the Right to Consent to Adoption or Long Term Care Short of Adoption of Cross. Aaron R. filed a motion, joined in by Mrs. H., to stay those proceedings until the appeal of the CINA order had been resolved. The Circuit Court denied the motion and proceeded to address the merits of the TPR petition. After a five-day trial, the Circuit Court issued an order terminating the parental rights of both Virginia H. and Aaron R. and granting guardianship of Cross H. to the Department. The petitioners both appealed this order.

Although the Circuit Court terminated the petitioners' parental rights, it did not, upon doing so, file an order closing the CINA case, opting to defer filing such an order until Mrs. H.'s

---

the terms of the permanency plan to their detriment, 385 Md. 282, 317, 869 A.2d 370, 391 (2005). See also *In re Billy W.*, 386 Md. at 692, 874 A.2d at 433 (reiterating the principle that a court order arising from a permanency plan review hearing is only appealable if it operates to either deprive a party of the care and custody of his or her children or changes the terms of that custody to his or her detriment).

There is no question regarding the appealability of the CINA order as to Mr. Aaron R. Upon confirmation of his paternity, Cross H.'s permanency plan was changed to reflect a goal of reunification with Mr. R. "[W]hen the plan is reunification, there necessarily is, on the part of the court and, certainly, the parent, an expectation—more than a hope— that the parent will regain custody." *In re Damon M.*, 362 Md. at 436, 765 A.2d at 628. It is thus clear that the change in permanency plan to non-relative adoption was to his detriment, since it essentially served to extinguish the expectation of regaining custody. Mr. Aaron R. did not appeal the CINA ruling and, thus, was not a party in the CINA appeal. The appeal was filed by Virginia H. alone, as to whom the matter of appealability is less straightforward. Virginia H. never had custody of Cross H., and, in light of the fact that the permanency plan was for reunification with Mr. R., and not her, as to her, the permanency planning goal remained the same, before and after the change of permanency plan from reunification to non-relative adoption. In *In re Samone H.*, *supra*, we made it clear that we do not consider a permanency planning order to be appealable when it does nothing to alter a parent's custody rights in a detrimental fashion, even when the terms of the parent's custody are unfavorable prior to the hearing, and remain just as unfavorable thereafter. 385 Md. at 313, 869 A.2d at 388.

CINA appeal had been resolved. Therefore, with regard to that appeal, the Department filed, in the Court of Special Appeals, a motion to dismiss the CINA appeal as moot. Relying on the Circuit Court's judgment in the TPR case as support, it argued that the court's order terminating the petitioners' parental rights effectively terminated the Circuit Court's jurisdiction in the CINA case as well. The intermediate appellate court, in an unreported opinion, denied the Department's motion. It reasoned that there still existed a live controversy in the CINA case since the juvenile court did not file, although it could have, an order closing the CINA case after the petitioners' parental rights had been terminated. It then addressed the merits of the appeal and affirmed the judgment of the juvenile court. The court held, specifically, that the juvenile court did not err when it changed the permanency plan for Cross H. from reunification with father back to non-relative adoption. Virginia H. filed a petition in this Court for issuance of a writ of certiorari to review the intermediate appellate court's CINA decision.[2] We denied the petition.

The petitioners, as we have seen, in the TPR case, noted timely appeals to the Court of Special Appeals. In a reported opinion, the intermediate appellate court concluded, *inter alia,* that the pendency of an appeal in the CINA case did not preclude the Circuit Court from proceeding to try the termination of parental rights case. *In re Adoption/Guardianship of Cross H.,* 200 Md.App. 142, 151, 24 A.3d 747, 753 (2011). We granted the petitioners' petition for writ of certiorari, *In re Adoption of Cross H.,* 422 Md. 352, 30 A.3d 193 (2011), to decide whether

"the circuit court [may] proceed with a termination of parental rights hearing when the parents' appeal of the

---

**2.** Virginia H., in her petition for writ of certiorari in the CINA case, presented the following question for our review:

"Where there is a preference for placing a child in the care of relatives, did the Court of Special Appeals err in affirming the lower court's denial of a request for custody and guardianship with a fit relative in favor of non-relative adoption?"

CINA order changing the permanency plan from reunification to non-relative adoption is still pending in the Court of Special Appeals." [3]

The majority declines to address this issue, dismissing it as moot, since, after the Court of Special Appeals affirmed the CINA order changing the permanency plan to non-relative adoption, and this Court denied the petitioners' petition for writ of certiorari to review that ruling, a live controversy ceased to exist. I agree that the case is moot. I do not agree that, given the unique procedural posture presented by this case, we should refuse to decide it. It is my opinion that this is an issue that is likely to recur, but will often do so within a time frame that will render it moot and, therefore, this Court, in order to provide much needed guidance on the effect of a TPR proceeding on a CINA appeal, must decide the issue. In that regard, in addressing the merits of the issue, I would conclude that proceeding with the adjudication of the parental rights of parties who have timely and properly appealed an order, which is still pending, that, while ostensibly separate, is, in fact, the effective predicate for such adjudication, would frustrate the right of such parties meaningfully and effectively to prosecute their appeal. Accordingly, I would hold that it is improper for a circuit court to adjudicate the parental rights of parents while a CINA case challenging the change in the permanency plan is pending on appeal.

## II.

### *Statutory Framework*

A child in need of assistance (CINA) is one who requires court intervention because: "(1) The child has been abused, has been neglected, has a developmental disability, or has a

---

**3.** The petitioners sought review of two additional questions:

> "II. Did the circuit court err in refusing to consider placement of the minor child with his paternal grandmother?
>
> "III. Did the circuit court err in terminating appellant's parental rights?"

We denied certiorari as to those questions.

mental disorder," and "(2) The child's parents, guardian, or custodian are unable or unwilling to give proper care and attention to the child and the child's needs." Md.Code (1974, 2006 Repl.Vol., 2011 Supp.) § 3–801(f) & (g) of the Courts and Judicial Proceedings Article ("CJ"). *See In re Andrew A.,* 149 Md.App. 412, 415, 815 A.2d 931, 932 (2003); *Tamara A. v. Montgomery County Dept. of Health and Human Servs.,* 407 Md. 180, 184 n. 1, 963 A.2d 773, 775 n. 1 (2009). The determination of whether a child should be considered a CINA must be made by a local department upon "receipt of a complaint from a person or agency having knowledge of facts which may cause a child to be subject to the jurisdiction of the court," and upon concluding "that the court has jurisdiction over the matter and that the filing of a petition is in the best interests of he child." CJ § 3–809(a). When the Department files a petition seeking a CINA determination, the juvenile court, which has exclusive jurisdiction over CINA cases, CJ § 3–803(a)(2), is required to hold an adjudicatory hearing for the purpose of determining whether the allegations set forth in the petition are true. CJ § 3–801(c) & 3–817(a). If the accuracy of the allegations is confirmed, the court then must hold a disposition hearing. CJ § 3–801(m) & 3–819(a)(1). The purpose of that hearing is to determine "(1) Whether [the] child is in need of assistance; and (2) If so, the nature of the court's intervention [required] to protect the child's health, safety, and well-being." CJ § 3–801(m). Having concluded that the child is in need of assistance, the juvenile court may commit the child to the custody of a parent, a relative or other suitable individual, or to the local department for out-of-home placement.[4] CJ § 3–819(b)(1)(iii). *See In re Damon M.,* 362 Md. 429, 435, 765 A.2d 624, 627 (2001); *In re Billy W.,* 386 Md. 675, 685, 874 A.2d 423, 429 (2005); *In re Karl H.,* 394 Md. 402, 417, 906 A.2d 898, 906 (2006).

---

**4.** "Out-of-home placement" is defined, by Md.Code (1984, 2006 Repl. Vol., 2011 Supp.) § 5–501(m) of the Family Law article ("FL"), as the "placement of a child into foster care, kinship care, group care, or residential treatment care."

After a child committed to the local department's custody enters an out-of-home placement, the juvenile court must hold a hearing within 11 months "to determine the permanency plan for [that] child." CJ § 3–823(b)(1)(i). "[T]he purpose of a permanency plan is to set the direction in which the parent, agencies, and the court will work in terms of reaching a satisfactory conclusion," regarding the best interests of the child in questions.[5] *In re Yve S.*, 373 Md. 551, 582, 819 A.2d

---

**5.** FL § 5–525(f), which provides guidelines for a local department's creation of a permanency plan, provides:

"(1) In developing a permanency plan for a child in an out-of-home placement, the local department shall give primary consideration to the best interests of the child, including consideration of both in-State and out-of-state placements. The local department shall consider the following factors in determining the permanency plan that is in the best interests of the child:

"(i) the child's ability to be safe and healthy in the home of the child's parent;

"(ii) the child's attachment and emotional ties to the child's natural parents and siblings;

"(iii) the child's emotional attachment to the child's current caregiver and the caregiver's family;

"(iv) the length of time the child has resided with the current caregiver;

"(v) the potential emotional, developmental, and educational harm to the child if moved from the child's current placement; and

"(vi) the potential harm to the child by remaining in State custody for an excessive period of time.

"(2) To the extent consistent with the best interests of the child in an out-of-home placement, the local department shall consider the following permanency plans, in descending order of priority:

"(i) returning the child to the child's parent or guardian, unless the local department is the guardian;

"(ii) placing the child with relatives to whom adoption, custody and guardianship, or care and custody, in descending order of priority, are planned to be granted;

"(iii) adoption in the following descending order of priority:

"1. by a current foster parent with whom the child has resided continually for at least the 12 months prior to developing the permanency plan or for a sufficient length of time to have established positive relationships and family ties; or

"2. by another approved adoptive family; or

"(iv) another planned permanent living arrangement that:

"1. addresses the individualized needs of the child, including the child's educational plan, emotional stability, physical placement, and socialization needs; and

1030, 1049 (2003). This Court has acknowledged the impor-
tance of a permanency plan, stating, in *In re Damon M.,* that
> "[t]he permanency plan is an integral part of the statutory
> scheme designed to expedite the movement of Maryland's
> children from foster care to permanent living, and hopefully,
> family arrangement. It provides the goal toward which the
> parties and the court are committed to work. It sets the
> tone for the parties and the court and, indeed, may be
> outcome determinative. Services to be provided by the
> local social service department and commitments that must
> be made by the parents and children are determined by the
> permanency plan."

362 Md. at 436, 765 A.2d at 627–28. Indeed, the juvenile court
has several placement options when permanency planning in
the best interest of the child: "reunification with the parent or
guardian," "placement with a relative," "adoption by a non-
relative," "custody and guardianship by a nonrelative," or:
> "[a]nother planned permanent living arrangement that:
> > "A. Addresses the individualized needs of the child, in-
> > cluding the child's educational plan, emotional stability,
> > physical placement, and socialization needs; and
> > "B. Includes goals that promote the continuity of rela-
> > tions with individuals who will fill a lasting and significant
> > role in the child's life...."

---

"2. includes goals that promote the continuity of relations with
individuals who will fill a lasting and significant role in the child's
life.

"(3) Subject to paragraphs (1) and (2) of this subsection and to the
extent consistent with the best interests of the child in an out-of-home
placement, in determining a permanency plan, the local department
shall consider the following in descending order of priority:

"(i) placement of the child in the local jurisdiction where the
child's parent or guardian resides; or

"(ii) if the local department finds, based on a compelling reason,
that placement of the child as described in item (I) of this para-
graph is not in the best interest of the child, placement of the child
in another jurisdiction in the State after considering:

"1. the availability of resources to provide necessary services to
the child;

"2. the accessibility to family treatment, if appropriate; and

"3. the effect on the local school system."

CJ § 3–823(e)(1)(i). If the juvenile court determines that adoption is the appropriate permanent plan for a child in need of assistance, it is required, by CJ § 3–823(g)(1), to "[o]rder the local department to file a petition for guardianship [6] in accordance with Title 5, Subtitle 3 of the Family Law Article within 30 days [of that determination] or, if the local department does not support the plan, within 60 days." Once that order is entered, the court is required to schedule a termination of parental rights hearing. CJ § 3–823(g)(2). Upon the filing of the guardianship petition to terminate parental rights, the juvenile court has to make a ruling either within 180 days or within 45 days of the first to occur: receipt of consents to terminate parental rights or trial on the merits. FL § 5–319(a).

An appeal to the intermediate appellate court, for review of the juvenile court's order regarding the CINA permanency plan, must be filed "within 30 days after entry of the judgment or order from which the appeal is taken." Md. Rule 8–202(a). Rule 8–207(a)(1) provides that such appeals be expedited. Accordingly, the appellant must file a brief within 40 days after the filing of the record, and the appellee must file a brief within 30 days of the filing of the appellant's brief. Md. Rule 8–502(a)(1) & (2). Oral argument in the appeal must be heard within 120 days after the transmission of the record, and the court must render a decision within 60 days "after oral argument or submission of the appeal on the briefs filed." Md. Rule 8–207(a)(5). The clerk of the Court of Special Appeals is then required to issue the mandate 15 days after the filing of the court's opinion or order. Md. Rule 8–207(a)(6). The non-prevailing party then has 15 days to file a petition for writ of certiorari with this Court. Md. Rule 8–302(a).

---

**6.** " 'Guardianship' means an award by a court, including a court other than the juvenile court, of the authority to make ordinary and emergency decisions as to the child's care, welfare, education, physical and mental health, and the right to pursue support." Md.Code (1974, 2006 Repl.Vol., 2011 Supp.) § 3–801(*o* ) of the Courts and Judicial Proceedings Article ("CJ").

### *Discussion*

### A.

It is a longstanding principle that "[a]ppellate courts do not sit to give opinions on abstract propositions or moot questions." *State v. Ficker*, 266 Md. 500, 506–7, 295 A.2d 231, 235 (1972). As a result, "[a]n appeal is subject to dismissal if the case has become moot," *Potts v. Governor of Md.*, 255 Md. 445, 449, 258 A.2d 180, 182 (1969), that is, when "past facts and occurrences have produced a situation in which, without any future action, any judgment or decree the court might enter would be without effect." *Hayman v. St. Martin's Evangelical Lutheran Church*, 227 Md. 338, 343, 176 A.2d 772, 775 (1962). See also *Coburn v. Coburn*, 342 Md. 244, 250, 674 A.2d 951, 954 (1996) ("A case is moot when there is no longer an existing controversy between the parties at the time it is before the court so that the court cannot provide an effective remedy.").

There is, however, a limited exception to the mootness doctrine, which we have recognized. *See In re Joseph N.*, 407 Md. 278, 303–04, 965 A.2d 59, 74 (2009); *In re Justin D.*, 357 Md. 431, 444–45, 745 A.2d 408, 415–16 (2000). Pursuant to this exception,

> "if the public interest clearly will be hurt if the question is not immediately decided, if the matter involved is likely to recur frequently, and its recurrence will involve a relationship between government and its citizens, or a duty of government, and upon any recurrence, the same difficulty which prevented the appeal at hand from being heard in time is likely again to prevent a decision, then the Court may find justification for deciding the issues raised by a question which has become moot, particularly if all these factors concur with sufficient weight."

*Lloyd v. Bd. of Supervisors of Elections of Baltimore County*, 206 Md. 36, 43, 111 A.2d 379, 382 (1954). I believe that it is clear that this exception is applicable to the case before us.

The question posed by the petitioners is whether a circuit court may proceed with a TPR hearing while an appeal from a

CINA order, involving the parental rights of the very same parties, is pending. In this case, this question is, indeed, moot: there is no longer a CINA appeal or case pending; therefore, a judgment by this Court, whether permitting a circuit court to adjudicate a TPR case during the pendency of a CINA appeal, or not, in the absence of a future case presenting that factual scenario, would simply address a hypothetical set of circumstances and would, thus, be without effect. *See Hayman, supra.* This, ordinarily, would, and should, prompt us to dismiss the matter before us. *See, e.g., State v. Peterson,* 315 Md. 73, 82, 553 A.2d 672, 677 (1989); *Mercy Hosp. v. Jackson,* 306 Md. 556, 562, 510 A.2d 562, 565 (1986). The limited exception articulated in Lloyd, supra, however, is applicable to this case; the issue before us "is likely to recur frequently," and in such a manner that "the same difficulty which prevented the appeal at hand from being heard in time is likely again to prevent a decision." 206 Md. at 43, 111 A.2d at 382.

As we have seen, a TPR proceeding that proceeds in the normal manner, where a motion to stay is either not filed, or, as here, filed but denied, will last for under 180 days. FL § 5–319(a)(1). The process for an appeal arising out of a permanency planning hearing, however, can go on for up to 7 months, even before a petition for writ of certiorari is filed in this Court. Md. Rule 8–207. This means that a TPR determination often will be made while a CINA appeal is still pending. This also means that the fact scenario currently before us, where parental rights are terminated while a CINA appeal is still pending in the same matter, is likely to recur. It is, thus, permissible for us to "exercise our discretion to decide the issue raised in the instant case because it is likely to recur frequently but will escape judicial review" due to the nature of the procedural timelines involved.

## B.

The petitioners' argument is straight-forward and succinct: a juvenile court may not proceed with a termination of parental rights hearing during the pendency of an appeal from a

CINA order changing a permanency plan from reunification to non-relative adoption, because an order of guardianship defeats the right of the parents to prosecute their appeal with effect. They rely on this Court's opinion in *In re Emileigh F.,* 355 Md. 198, 204, 733 A.2d 1103, 1105 (1999), in which we cautioned a juvenile court against taking actions that are inconsistent with a pending appeal. The petitioners reason that, by proceeding with a TPR hearing and, subsequently, terminating the petitioners' parental rights while their CINA appeal was pending, the juvenile court's actions in this case violated our holding in *In re Emileigh F.,* because they constituted just such an "inconsistent action." The petitioners explain that, permitting a circuit court to terminate parental rights before a CINA appeal is resolved, renders any remedy arising out of that appeal meaningless; the parents of the child in question, upon being stripped legally of their parental rights, no longer possess an interest in the matter and, thus, effectively are deprived of the appeal right that Maryland law and our cases contemplate.

The respondent argues, conversely, that the juvenile court properly denied the motion for a stay of the TPR proceedings. It explains that the trial court's actions were permissible because that court is bound, by FL § 5–319(a)(1), to make a guardianship determination within 180 days of a TPR petition being filed. Since no statute or rule requires the juvenile court to grant a stay in a TPR case pending resolution of a CINA appeal, the respondent submits that the Circuit Court would have violated the 180–day limit prescribed by the statute had the stay been granted. In addition, the respondents distinguish this case from *In re Emileigh F.,* asserting that, while that case involved an action by the Circuit Court that directly impacted the appeal, the juvenile court's decision to proceed with the TPR hearing in this case did not directly interfere with the CINA appeal. The respondent emphasizes, in that regard, and reiterates that the TPR proceeding and the appeal from the permanency planning order are two separate matters and should be treated as such.

The Court of Special Appeals agreed with the respondent. *In re Adoption/Guardianship of Cross H.,* 200 Md.App. at 150, 24 A.3d at 752. It reasoned that the Circuit Court's decision to proceed with the termination of parental rights hearing while the CINA case was pending on appeal did not have the effect of closing that matter and, thus, did not interfere with the appeal in a manner that is prohibited by *Emileigh F. Id.* Furthermore, the intermediate appellate court, again agreeing with the respondent, explained that "[w]hile a CINA adjudication must precede a TPR determination, it is a separate legal proceeding." *Id.* It was unpersuaded, therefore, "despite the fact that appellants' claim of error ... was mooted by the action of the Court of Appeals," that "the pendency of the CINA appeal was a bar to the TPR case proceeding in the circuit court." *Id.,* 200 Md.App. at 151, 24 A.3d at 753.

We have long recognized that "in a proper case a court may stay proceedings pending the determination of another proceeding that may affect the issues raised." *Coppage v. Orlove,* 262 Md. 665, 666, 278 A.2d 587 (1971) (quoting *Restivo v. Princeton Constr. Co.,* 223 Md. 516, 521, 165 A.2d 766, 769 (1960)); *accord Noel v. Noel,* 173 Md. 147, 151, 195 A. 322, 323 (1937). To be sure, the decision whether to grant or deny a stay of proceedings falls within the discretion of the trial court, and is thus governed, on review, by the "abuse of discretion" standard. We are always mindful, therefore, that "in the absence of an allegation or proof of an abuse of discretion, [the Court] will not disturb the exercise by the trial court of its discretion." *Dodson v. Temple Hill Baptist Church, Inc.,* 254 Md. 541, 546, 255 A.2d 73, 75 (1969); *Vaughn v. Vaughn,* 146 Md.App. 264, 279, 806 A.2d 787, 796 (2002). Nonetheless, in light of the facts before us, I am inclined to disagree with the intermediate appellate court, and, thus, to conclude that the trial court abused its discretion when it refused to stay the termination of parental rights proceedings during the pendency of the CINA appeal. Our holding in *In re Emileigh F.,* 355 Md. 198, 733 A.2d 1103, is particularly instructive and dispositive.

In *In re Emileigh F.*, we were asked to decide "whether the District Court of Maryland in Montgomery County, sitting as the juvenile court, erred in closing [a CINA] case thereby terminating its jurisdiction over Emeleigh F. while an appeal was pending in the Court of Appeals." 355 Md. at 199–200, 733 A.2d at 1103. There, the appellant, the mother of Emeleigh F., appealed the outcome of a CINA custody hearing, asserting that she had been improperly denied the right to be present during closing argument. *Id.*, 355 Md. at 200, 733 A.2d at 1104. While that case was pending before the Court of Appeals, the Department of Health and Human Services filed a Motion for Order of Recission and Termination of juvenile court jurisdiction, asserting that Emeleigh F.'s father had proven himself to be a suitable guardian, thus eliminating the need for Emeleigh F. to be categorized as a child in need of assistance. *Id.*, 355 Md. at 200–01, 733 A.2d at 1104. Agreeing that Emeleigh F. was no longer a CINA, the juvenile court closed her case and terminated its jurisdiction over her. *Id.*, 355 Md. at 201, 733 A.2d at 1104. Subsequently, and without knowledge that the juvenile court had terminated its jurisdiction in the matter, this Court issued an opinion resolving the appellant's original appeal; regarding the CINA order, we held that the juvenile court abused its discretion when it denied the appellant the opportunity for closing argument. *Id.* We also held that the juvenile court's termination of its jurisdiction in the CINA case, pending on appeal, was prohibited. We explained:

"In the instant case, the action taken by the juvenile court addressed matters that were clearly involved in the pending appeal. The court's action in closing the CINA case and thereby terminating that court's jurisdiction, if permitted, would in essence defeat the right of [the appellant] to prosecute her appeal with effect. We hold that the juvenile court's actions were inconsistent with the pending appeal and were prohibited."

*Id.*, 355 Md. at 204, 733 A.2d at 1105.

While the procedural posture in *In re Emileigh F.* was different, the effect on the pending appeal of the juvenile

court's termination of its jurisdiction in that case, is essentially the same as that of the juvenile court's termination of parental rights in this case. Here, as was the case in *In re Emileigh F.*, the juvenile court's action was improper because it was inconsistent with the pending appeal, and because it interfered, impermissibly, with the petitioners' ability meaningfully to pursue their appeal.

It has been our consistent position that "[a]fter an appeal is filed, a trial court may not act to frustrate the actions of an appellate court." *In re Emileigh F.*, 355 Md. at 202, 733 A.2d at 1105. As such, while a trial court may continue to act even after an appeal is taken, it may only do so "with reference to matters not relating to the subject matter of, or matters not affecting, the appellate proceeding." *Peterson*, 315 Md. at 80, 553 A.2d at 676. "Post-appeal orders which affect the subject matter of the appeal are prohibited." *In re Emileigh F.*, 355 Md. at 202–03, 733 A.2d at 1105. *See also Ditmars v. Camden Trust Co.*, 131 N.J. Eq. 85, 86–87, 24 A.2d 213, 214 (N.J.Ch. 1942) ("[T]he substance of a right of appeal should not be demolished and thus render the ultimate decision of the appellate tribunal purely hypothetical.").

While the TPR and CINA proceedings are and were separate, the TPR proceedings addressed matters that were so inextricably linked to those involved in the appeal arising out of the change in permanency plan, that it would be inaccurate to characterize them as two entirely distinct actions. Not only did both cases involve custody arrangements for the same child, but also, the parental and guardianship rights of the very same parents. Indeed, the very initiation of TPR proceedings depended on the outcome of the permanency planning hearing in the trial court. The result of the CINA case in the juvenile court was also what prompted, and was the basis of, the CINA appeal. The CINA appeal arose directly from a determination, by the juvenile court, following the permanency planning hearing, that the most appropriate permanency plan for Cross H. would not involve reunification with his parents but, rather, should consist of non-relative adoption. The guardianship petition, which resulted in the

juvenile court's termination of petitioners' parental rights, was filed pursuant to, and consistent with, the juvenile court's determination, in the CINA case, that the proper permanency path for the child was adoption. It is thus accurate to assert that the outcome of the CINA proceedings, beyond serving as a prerequisite to the TPR proceedings, actually began the process of terminating the petitioners' parental rights, while the outcome of the guardianship proceedings simply served, in essence, as the final word on the matter.

As we have seen, where a case on appeal involves the same matters presented in the Circuit Court, the Circuit Court is prohibited from acting in a manner that frustrates the appellate procedure, or renders its outcome moot. That is precisely what occurred in this case. The juvenile court's termination of the petitioners' parental rights impermissibly interfered with the CINA appeal, because, thereafter, any decision by the appellate court regarding the permanency plan would have been rendered meaningless, and would have been purely hypothetical. Indeed, once the juvenile court terminated the petitioners' parental rights, there was no meaningful remedy that could have resulted from the CINA appeal; even a favorable holding in that case would have been, in reality and effect, a nullity. This is the very kind of abrogation of appeal rights which we cautioned against in *In re Emileigh F.,* 355 Md. at 204, 733 A.2d at 1105. The appeal rights associated with CINA matters are rendered empty if the State may simply beat defendants to the punch by terminating their parental rights before they can obtain review of the juvenile court's permanency plan determination. The Circuit Court's decision to proceed resulted in a clear interference with the petitioners' right to prosecute the CINA matter effectively on appeal.

While I am cognizant of the statutorily imposed time limits on termination of parental rights proceedings, it is this very fact that causes me to disagree with the intermediate appellate court. The 180-day deadline of FL § 5–319(a)(1) is what makes it likely that parental rights often will be extinguished while a CINA appeal is still pending. This 180-day limit, in

combination with the timeline for an appeal from a CINA order also, as we have seen, makes it likely that there will be frequent re-occurrences of the very fact scenario presented in this case. Consequently, a holding that would permit TPR/guardianship proceedings to proceed in tandem or concurrently with CINA appeals, bearing on the appropriateness of the former, would simply encourage unnecessary and, thus, wasteful expenditures of judicial resources, as appellate courts often would be required to consider and decide cases whose outcomes will be of no practical or meaningful effect.

Not only is the question before this Court one that is likely to recur, yet evade review, it is one that significantly affects the public interest, and thus, requires this Court to provide guidance, to lower courts, on the proper way to proceed in the future. *Lloyd,* 206 Md. at 43, 111 A.2d at 382. Indeed, we have recognized the centrality of "a parent's Fourteenth Amendment liberty interest in raising his or her children as he or she sees fit, without undue interference by the State." *In re Yve S.,* 373 Md. at 565, 819 A.2d at 1038. Quoting Justice Blackmun's dissenting opinion in *Lassiter v. Dept. of Social Servs. of Durham County, N.C.,* 452 U.S. 18, 38, 101 S.Ct. 2153, 2165, 68 L.Ed.2d 640, 656–57 (1981), we also have acknowledged that "the interest of a parent in the companionship, care, custody, and management of his or her children" is one which "occupies a unique place in our legal culture, given the centrality of family life as the focus for personal meaning and responsibility." *In re Adoption/Guardianship No. 10941,* 335 Md. 99, 113, 642 A.2d 201, 208 (1994) (internal quotation marks omitted). "When the State initiates a parental rights termination proceeding, it seeks not merely to infringe that fundamental liberty interest, but to end it." *Id.,* 335 Md. at 112–13, 642 A.2d at 208 (quoting *Santosky v. Kramer,* 455 U.S. 745, 759, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599, 610 (1982)). Given the importance of a parent's constitutional right to raise his or her children, and the interference that a TPR proceeding potentially presents to that right, it is our duty, if it be within our authority, to ensure that those proceedings are conducted properly, and in such a manner that those rights

are properly safeguarded. That is all the petitioners are asking of this Court. We fail to fulfill our duty in that regard by declining to provide them, and lower courts, with the guidance they seek.

Accordingly, not only do I believe that we should have decided the issue presented, but should have, upon reviewing it, held that a circuit court may not adjudicate TPR/guardianship proceedings while an appeal of the CINA order changing the permanency plan from reunification to non-relative adoption, by the very parties whose parental rights are at stake, is still pending in an appellate court.

I dissent.

Judge GREENE has authorized me to state he joins in this opinion.